Melanie J. Vartabedian (#10148)
Nathan R. Marigoni (#14885)
BALLARD SPAHR LLP
One Utah Center, Suite 800
201 South Main Street
Salt Lake City, Utah 84111-2221
Telephone: (801) 531-3000
Facsimile: (801) 531-3001
vartabedianm@ballardspahr.com
marigonin@ballardspahr.com

Attorneys for Defendant, Vivint, Inc.

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ANDREW PERRONG, on behalf of himself and others similarly situated,<br><br>       Plaintiff,<br><br>v.<br><br>VIVINT, INC. and DSI DISTRIBUTING, INC. d.b.a DSI SYSTEMS,<br><br>       Defendants. | DEFENDANT VIVINT, INC'S MOTION TO DISMISS OR TO STRIKE PLAINTIFF'S CLASS ALLEGATIONS<br><br><br>Case No.:  2:19-cv-00568-CW-CMR<br><br>District Judge Clark Waddoups<br>Magistrate Judge Cecilia M. Romero |

Pursuant to Rule 12(b)(1), 12(b)(6), 12(f) and 23(d) of the Federal Rules of Civil

Procedure, Defendant Vivint, Inc. ("Vivint") hereby moves the Court to dismiss the Complaint

filed by Plaintiff Andrew Perrong ("Perrong") or, alternatively, to strike the class allegations

from Plaintiff's Complaint.

## I.    INTRODUCTION

Perrong is a professional plaintiff who has made a business of filing claims under the Telephone Consumer Protection Act ("TCPA").  Since 2015, Perrong has filed over 65 TCPA complaints and, in the past year, has filed at least twenty TCPA complaints in federal courts in Florida, Georgia, Illinois, Indiana, Nevada, Pennsylvania, and now Utah.[1]  Every Complaint is

---

[1] *See Perrong v. ReWeb Real Estate*, No. 2:19-cv-04228 (E.D. Pa. filed Sept. 12, 2019); *Perrong v. Ox Car Care*, No. 2:19-cv-03224 (E.D. Pa. filed July 24, 2019); *Perrong v. Carguardian Warranty*, No. 2:19-cv-02770 (E.D. Pa. June 25, 2019); *Perrong v. Prosper Trading*, No. 1:19-cv-03871 (N.D. Ill. filed June 10, 2019); *Perrong v. Direct Energy LP*, No 2:19-cv-02373 (E.D. Pa. filed May 31, 2019); *Perrong v. Medical Guardian LLC*, No. 2:19-cv-02371 (E.D. Pa. filed May 31, 2019); *Frey et al v. Great American Power*, No. 1:19-cv-02450 (N.D. Ga. Filed May 29, 2019); *Perrong v. Prosperity RE & Invest* No. 2:19-cv-02293 (E.D. Pa. filed May 28, 2019); *Perrong v. Golden Rule Insurance Co.*, No. 1:19-cv-01940 (S.D. Ind. Filed May 14, 2019); *Perrong v. Lynn* No. 2:19-cv-02000 (E.D. Pa. filed May 7, 2019); *Perrong v. Harris & Harris LTD*, No. 1:19-cv-2425 (N.D. Ill. filed Apr. 10, 2019); *Perrong v. Rushmore Energy, LLC* No. 2:19-cv-01367 (E.D. Pa. filed Apr. 1, 2019); *Brienes et al v. Pro Custom Solar LLC,* No. 3:19-cv-00353 (M.D. Fla. Filed Mar. 27, 2019); *Perrong v. American Water Concepts, LLC*, No. 2:19-cv-00931 (E.D. Pa. Mar. 5, 2019); *Perrong v. Sperian Energy Corp.*, No. 2:19-cv-00115 (D. Nev. Filed Jan. 25, 2019); *Perrong v. Selltell Inc*, No.2:19-cv-00191 (E.D. Pa. filed Jan. 11, 2019); *Perrong v. Stars & Stripes Chimney Servs., LLC*, No. 2:19-cv-00039 (E.D. Pa. filed Jan. 4, 2019); *Perrong v. Space Coast Marketing,* No. 2:18-cv-5510 (E.D. Pa. filed Dec. 21, 2018); *Perrong v. Ox Car Care Inc.*, No. 2:18-cv-05027 (E.D. Pa. filed Nov. 20, 2018); Perrong v. MS Int'l Enters., No. 2:18-cv-04760 (E.D. Pa. filed Nov. 2, 2018); *Perrong v. Texpo Power, LP*, No. 2:18-cv-3213 (E.D. Pa. filed July 27, 2018); *Perrong v. Secure Auto. Solutions, Inc.*, No. 1:18-cv-02864 (E.D. Pa filed July 9, 2018); *Perrong v. Cardo Windows Inc.*, No. 1:18-cv-11309 (D.N.J. filed July 3, 2018); *Perrong v. Advanced Brokerage Concepts LLC*, No. No. 2:18-cv-02624 (E.D. Pa. filed June 21, 2018); *Perrong v. McAveney*, No. 2:18-cv-02524 (E.D. Pa. filed June 15, 2018); *Perrong v. Capital Comeback LLC*, No. 3:18-cv-10017 (D.N.J. filed June 1, 2018); *Perrong v. Voisel LLC*, No. 2:18-cv-02227 (E.D. Pa. filed May 29, 2018); *Perrong v. Am. Renovation Ctr. Inc.*, No. 2:18-cv-02069 (E.D. Pa. filed May 17, 2018); *Perrong v. Liberty Power Corp.*, No. 1:18-cv-712 (D. Del. filed May 11, 2018); *Perrong v. Washington Inv. Grp. LLC*, No. 2:18-cv-01934 (E.D. Pa. filed May 8, 2018); *Perrong v. Macy's Inc.*, No. 2:18-cv-01382 (E.D. Pa. filed Apr. 2, 2018); *Charvat v. Santanna Nat. Gas Corp.*, No. 1:18-cv-2310 (N.D. Il. filed Mar. 30, 2018); *Perrong v. Direct Client Servs.*, No. 2018-02847 (Pa. Ct. Com. Pl., Montgomery Cnty. filed Feb. 2, 2018); *Perrong v. Choice Energy LLC*, No. 2017-28953 (Pa. Ct. Com. Pl., Montgomery Cnty. filed Dec. 18, 2017); *Perrong v. DNG Complete Home Improvement Corp.*, No. 2017-28894 (Pa. Ct. Com. Pl.,Montgomery Cnty. filed Dec. 15, 2017);

(continued...)

based on allegations that the defendant placed unauthorized calls to one of the seventeen phone numbers Perrong claims to own.[2]  Nearly all of these suits have settled quickly, with Perrong

_____
(...continued)

*Perrong v. Attorneys Tax Relief LLC*, No. 2017-28483 (Pa. Ct. Com. Pl., Montgomery Cnty. filed Dec. 8, 2017); *Perrong v. Penn Foster Edu. Grp. Inc.*, No. 2017-28362 (Pa. Ct. Com. Pl., Montgomery Cnty. filed Dec. 8, 2017); *Perrong v. Smith*, No. 2017-28359 (Pa. Ct. Com. Pl., Montgomery Cnty. filed Dec. 8, 2017); *Perrong v. HBW Leads LLC*, No. 2:17-cv-05442 (E.D. Pa. filed Dec. 4, 2017); *Perrong v. Consumer Advocacy Ctr. Inc.*, No. 2017-27877 (Pa. Ct. Com. Pl., Montgomery Cnty. filed Nov. 29, 2017); *Perrong v. H&R Chimney Corp.*, No. 2017-27206 (Pa. Ct. Com. Pl., Montgomery Cnty. Filed Nov. 17, 2017); *Perrong v. William Novick Agency LLC*, No. 2:17-04172 (E.D. Pa. filed Sept. 19, 2017); *Perrong v. TranzVia LLC*, No. 2:17-cv-03664 (E.D. Pa. filed Aug 14, 2017); *Perrong v. Sussman Inc.*, No. 2:17-cv-03511 (E.D. Pa. filed Aug. 7, 2017); *Perrong v. Perlow*, No. CV-224-2017 (Pa. Magis. Dist. Ct. 38-2-08 filed Aug. 3, 2017); *Perrong v. Lednor Corp.*, No. 2:17-cv-03452 (E.D. Pa. filed Aug. 2, 2017); *Perrong v. Ripple*, No. CV-221-2017 (Pa. Magis. Dist. Ct. 38-2-08 filed Aug. 2, 2017); *Perrong v. Smith*, No. 2:17-cv-03366 (E.D. Pa. filed July 27, 2017); *Perrong v. Just Energy*, No. CV-195-2017 (Pa. Magis. Dist. Ct. 38-2-08 filed July 7, 2017); *Perrong v. Greenlight Energy Inc.*, No. CV-194-2017 (Pa. Magis. Dist. Ct. 38-2-08 filed July 7, 2017); *Perrong v. Verizon Commc'ns. Inc.*, No. CV-181-2017 (Pa. Magis. Dist. Ct. 38-2-08 filed June 21, 2017); *Perrong v. Ins. Resource Grp.*, No. CV-176-2017 (Pa. Magis. Dist. Ct. 38-2-08 filed June 21, 2017*); Perrong v. Hamilton*, No. CV-164-2017 (Pa. Magis. Dist. Ct. 38-2-08 filed June 8, 2017); *Perrong v. MJB Mktg. Inc.*, No. CV-159-2017 (Pa. Magis. Dist. Ct. 38-2-08 filed May 31, 2017); *Perrong v. Arevalo*, No. CV-146-2017 (Pa. Magis. Dist. Ct. 38-2-08 filed May 18, 2017); *Perrong v. Elite Chimney Sols. Inc.*, No. 2:17-cv-01512 (E.D. Pa. filed Apr. 3, 2017); *Perrong v. FIG Capital LLC*, No. CV-167-2016 (Pa. Magis. Dist. Ct. 38-2-08 filed July 22, 2016); *Perrong v. Trademark Publ. Inc.*, No. CV-140-2016 (Pa. Magis. Dist. Ct. 38-2-08 filed June 16, 2016); *Perrong v. Merchant Funding Sols. LLC*, No. CV-125-2016 (Pa. Magis. Dist. Ct. 38-2-08 filed June 7, 2016); *Perrong v. Student Debt Doctor LLC*, No. CV-109-2016 (Pa. Magis. Dist. Ct. 38-2-08 filed May 18, 2016); *Perrong v. Aspen Home Improvements Inc.*, No. 5:15-cv-04023 (E.D. Pa. filed July 21, 2015); *Perrong v. The Student Loan Grp.*, No. 2:15-cv-02634 (E.D. Pa. filed May 11, 2015); *Perrong v. 800 Repairs Corp.*, No. CV-128-2015 (Pa. Magis. Dist. Ct. 38-2-08 filed May. 14, 2015); *Perrong v. Risen Capital LLC*, No. 2:15-cv-01807 (E.D. Pa. filed Apr. 7, 2015); *Perrong v. Maximum Security Alarm Inc.*, No. CV-8-2015 (Pa. Magis. Dist. Ct. 38-2-08 filed Jan. 14, 2015); *Perrong v. Frontier Utils. Ne. LLC*, No. CV-7-2015 (Pa. Magis. Dist. Ct. 38-2-08 filed Jan. 14, 2015).

    [2] Perrong has identified in public court filings at least the following phone numbers he claims to own: 215-207-9084, 215-208-9484, 215-322-7485, 215-338-3458, 215-436-9476, 215-634-7722, 215-725-1530, 215-757-0689, 215-791-6957, 215-800-0199, 267-225-8277, 267-935-

(continued...)

extracting a cash settlement from the alleged defendant.  But Perrong's long-running and prolific

filing streak and resulting cash settlements demonstrate that Perrong has made a business of

TCPA litigation.  He therefore lacks a cognizable injury-in-fact from the alleged calls and is not

within the class of persons the TCPA is designed to protect.  This Court should thus find that he

lacks standing to continue to bring such suits.

Moreover, Perrong has begun using the threat of class litigation as leverage to obtain

increasingly large settlements, and this case is only the latest example.  Based on two alleged

calls from DSI and two text messages from Vivint allegedly sent *after* Perrong had signed up for

service, Perrong seeks to certify two nationwide classes of persons including all persons who

purportedly received an automated or prerecorded call or a solicitation from DSI or Vivint over a

four-year period.  But Perrong's class claims are not plausible and should be stricken because

individualized issues render certification of such a class inappropriate.  Vivint should not be

required to endure burdensome discovery to defend improper class claims brought by a serial

litigant who is outside the scope of the TCPA's protection.  Accordingly, Vivint requests that, if

Perrong's Complaint is not dismissed in its entirety, the Court should dismiss the class claims or

strike the class allegations from the Complaint.

## II.    STATEMENT OF FACTS

1.     Perrong alleges that he received "automated telemarketing calls from DSI" on

April 4 and June 5, 2019. (Compl. ¶ 28).

_____

(...continued)
9013, 215-947-1920, 301-920-1621, 610-626-7800, 856-829-8229, 888-329-0305.  Perrong has
filed TCPA claims based on calls to six of these numbers in the past 12 months.

2.      Perrong alleges he answered the call on June 5, 2019 and immediately knew the call was a commercial call from an automated, predictive dialing system. (Compl. ¶ 31).

3.      Nevertheless, Perrong chose to continue with the call and, after being transferred to a Vivint representative, he "confirmed an appointment" with Vivint, and his credit card was charged for Vivint's service.  (Compl. ¶ 37).

4.      Perrong alleges that, on June 5—i.e., the same day he paid to become a Vivint customer—he "communicated to Vivint that he was illegally called and wanted to receive no more contacts." (Compl. ¶ 38).

5.      Perrong does not identify how he "communicated" this information to Vivint, to whom the communication was addressed, or whether it was received or confirmed by Vivint. (*Id.*)

6.      Perrong alleges that, on June 12 and June 13, 2019, Vivint sent text messages to Perrong "regarding Vivint services." (Compl. ¶¶ 39-43).

7.      These text messages were not solicitations, but consisted of an installation appointment reminder and a notification regarding the availability of a smartphone app to connect with the Vivint system which Perrong had signed up for.  (Text Message Log and Templates, attached as Exhibit A).[3]

8.      The only harms alleged by Perrong are that he was "temporarily deprived of legitimate use of [his phone] because the phone line was tied up during the telemarketing calls

---

[3] As these text messages are referenced in Perrong's complaint and central to his claim, the Court may consider copies of the text messages on a motion to dismiss, even under Rule 12(b)(6). *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997).

and [his] privacy was improperly invaded" and the calls were "frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff." (Compl. ¶ 41).

9.      Perrong is a serial litigant who has filed no fewer than 65 TCPA complaints since 2015, and has filed no fewer than 20 of those complaints in the last year. *See* Supra, Note 1.

10.      Perrong has claimed in his TCPA complaints to own no fewer than seventeen phone numbers. *See* Supra Note 2.

11.      Perrong's Complaint contains no allegation that Defendants made calls to any person other than Perrong. Nevertheless, Perrong seeks to represent two nationwide classes:

Class 1

All persons within the United States to whom: (a) Defendants, and/or a third party acting on their behalf, made at least two telephone solicitation calls during a 12-month period; (b) to a residential telephone number; (c) that had been listed on the National Do Not Call Registry for more than 31 days prior to the first call; (d) promoting the goods or services of the Defendants; (e) at any time in the period that begins four years before the date of filing this Complaint to trial.

Class 2

All persons within the United States to whom: (a) Defendants, and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) to their cellular telephone number or number that is charged per call; (c) using an automatic telephone dialing system or an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

(Compl. ¶ 65).

## III.   LEGAL STANDARD

### A.      Motion to Dismiss

"A motion under rule 12(b)(1) can be made on the ground that the plaintiff lacks standing and therefore the court lacks subject matter jurisdiction." *Baca v. Colo. Dep't of State*, No. 18-1173, 2019 U.S. App. LEXIS 24805, at *14 (10th Cir. Aug. 20, 2019). On a motion to dismiss

under Rule 12(b)(1), "a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). "When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations." *Id.* Instead, a Court is obligated to "resolve disputed jurisdictional facts," and "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing" to assist it in doing so. *Id.* "The party invoking federal jurisdiction has the burden to establish that it is proper, and there is a presumption against its existence." *Baca*, 2019 U.S. App. LEXIS 24805, at *14.

Under Rule 12(b)(6), a defendant may move to dismiss a plaintiff's claims for "failure to state a claim upon which relief can be granted." The Supreme Court has established a two-step process for determining whether a plaintiff has pled sufficient facts to overcome a motion to dismiss. First, the Court must ignore "mere conclusory statements" or legal conclusions, which are not entitled to the presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Thus, "a complaint must contain sufficient factual matter . . . to 'state a claim [for] relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 662 (quoting *Twombly*, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[C]onclusory allegations without supporting factual averments are

insufficient to state a claim on which relief can be based." *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009) (alteration in original) (internal quotation marks omitted).

### B.     Motion to Strike

The Supreme Court has recognized that filing a motion to strike before the plaintiff has moved to certify the class – or even before discovery – is proper where "the issues are plain enough from the pleadings to determine whether the interests of absent parties are fairly encompassed within the named plaintiff's claim." *Gen'l Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 160 (1982).

Accordingly, federal courts—including sister courts in this circuit—have recognized that it is appropriate to strike class allegations under Rules 12(f), 23(C)(1)(A), and 23(d)(1)(D) "as soon as it becomes obvious that the plaintiff will be unable to satisfy Rule 23." *Anderson Living Tr. v. WPX Energy Prod., LLC*, No. CIV 12-0040 JB/KBM, 2016 U.S. Dist. LEXIS 131119, at *20-21 (D.N.M. Aug. 27, 2016) ("[I]f the allegations are facially inadequate on the basis of incontrovertible facts, a court may require a plaintiff to strike class allegations before discovery or before the plaintiff files a motion to certify a class."); *Dollison v. Am. Nat'l Ins. Co.*, No. 13-CV-0100-CVE-FHM, 2013 U.S. Dist. LEXIS 67279, at *26 (N.D. Okla. May 9, 2013) ("[Rule 23(d)(1)(D)] gives a district court the authority to strike or dismiss class allegations before discovery if it is apparent from the plaintiff's complaint that a class cannot be certified.")

## IV.    ARGUMENT

Perrong's business of bringing TCPA lawsuits deprives him of standing to bring such cases, as he has no suffered no concrete injury and falls outside the zone of interests of the TCPA.  For this reason, his Complaint should be dismissed.

Alternatively, this Court should dismiss or strike the class allegations from the Complaint for three reasons.  First, the well-recognized individualized issues of consent, which are a complete defense to liability, predominate over any class-wide issues.  Second, Perrong alleges a fail-safe class that is not ascertainable under Rule 23.  Third, Perrong's Complaint is devoid of any facts to support his class-wide allegation, and therefore, does not plausibly state class-wide allegations.

### A.       Perrong Lacks Standing to Bring this TCPA Case

The United States Constitution sets forth that the jurisdiction of the federal courts will only extend to "Cases" and "Controversies."  *Lance v. Coffman*, 549 U.S. 437, 439 (2007).  "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III.'"  *Collins v. Daniels*, 916 F.3d 1302, 1312 (10th Cir. 2019) (internal quotation marks omitted).  "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or particular issues."  *Allen v. Wright*, 468 U.S. 737 (1984).  To establish standing, the plaintiff must show: 1) an "injury-in-fact" which is concrete and particularized, as well as actual or imminent; 2) that the conduct complained of is "fairly traceable" to the defendant; and 3) that the injury is "likely redressed" by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Further, "Article III standing requires a concrete injury even in the context of a statutory violation."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016).  A plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1543 (2016).  Rather, to "satisfy the injury-in-fact requirement of

Article III," the injury cannot be a "bare procedural violation, divorced from any concrete harm." *Id.* "A 'concrete' injury must be 'de facto'; that is, it must actually exist, as opposed to being hypothetical or speculative." *Salcedo v. Hanna*, 2019 U.S. App. LEXIS 25967, at *6 (U.S. 11th Cir. Aug. 28, 2019). This requirement of a "concrete" rather than merely "statutory" injury applies in the TCPA context. *Id.* at *6-8; *Hampton v. Barclays Bank Del.*, No. 18-4071-DDC-ADM, 2019 U.S. Dist. LEXIS 152932, at *27 (D. Kan. Sep. 9, 2019).

In *Salcedo*, the Eleventh Circuit concluded that the brief annoyance wrought by a single text message sent to a cellphone was not a sufficient injury to support standing for a TCPA claim, absent non-conclusory allegations of other harm suffered by the plaintiff. There, the plaintiff alleged that the text message "caused Plaintiff to waste his time answering or otherwise addressing the message. While doing so, both Plaintiff and his cellular phone were unavailable for otherwise legitimate pursuits." 2019 U.S. App. LEXIS 25967, at *7. He further alleged that the message "resulted in an invasion of Plaintiff's privacy and right to enjoy the full utility of his cellular device." *Id.* He did not allege the text message resulted in additional cost to him. *Id.*

The court rejected these claims, concluding that a general allegation of wasted time and unavailability of his device were insufficient to show a concrete harm. *Id.* at *7-8. In particular, the court concluded that the plaintiff failed to quantify any lost time, failed to identify any lost opportunity resulting from the brief unavailability of the device, and observed that a mobile phone, unlike older technologies such as a fax machine, is not rendered unavailable as a result of incoming messages. *Id.* at *8-10 ("A fax machine's inability to receive another message while processing a junk fax has no analogy with cell phones and text messaging."). The court further concluded that calls to mobile phones cause less intrusion than calls to a home phone due to their

portability and ability to be silenced. *Id*. at *13. The court thus concluded that the "brief, inconsequential annoyance" of a single text messages was "categorically distinct" from the types of intangible but real harms that are sufficient to invoke Article III standing.

The same is true here. Perrong alleges that he received two phone calls from DSI, two months apart, the first of which he ignored. Compl. ¶¶ 28, 29. Perrong alleges that he immediately knew the call was a commercial call from an automated, predictive dialing system. Compl. ¶ 31. Perrong thus could have terminated the call, but elected to stay on the line in order to "confirm[] an appointment" with Vivint and pay for service. Compl. ¶ 37. Only after choosing to sign up for Vivint's service did he receive any further contact from Vivint. Compl. ¶¶ 39-43.

The harms alleged by Perrong here are indistinguishable from the "chirp, buzz, or blink of a cell phone" the *Salcedo* court found was a "brief, inconsequential annoyance" that did not constitute a concrete harm. *Id.* at *19. Indeed, absent Perrong's decision to "confirm Vivint's involvement" in support of his TCPA-litigation business, Compl. ¶¶ 31, 16, it is unlikely any call would have lasted more than a few seconds after Perrong realized it was an automated call. *See Salcedo*, 2019 U.S. App. LEXIS 25967, at *20 (concluding that "Congress does not view tying up a phone line for five seconds as a serious intrusion"). Additionally, Perrong would not have received the text messages except for the fact that he solicited them by signing up for Vivint's service—as evidenced by the fact that the text messages consisted of an installation-appointment reminder and notification of the availability of a smartphone app to connect to Perrong's new Vivint system. (Ex. A). Accordingly, just as the plaintiff in *Salcedo*, Perrong lacks a concrete injury sufficient to support Article III standing. *See also Zemel v. CSC Holdings LLC*, 2017 U.S.

Dist. LEXIS 63398, at *14-15 (concluding receipt of three text messages did not constitute nuisance that would cause injury and explaining that calls to cell phone "do[] not implicate the same privacy concern" as calls to a residence).

Moreover, Perrong's alleged harms fall outside the zone of interests that the TCPA seeks to protect. *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 796–806 (W.D. Pa. 2016) (no standing for repeat TCPA litigant); *Tel. Sci. Corp. v. Asset Recovery Sols.*, LLC, No. 15-CV-5182, 2016 U.S. Dist. LEXIS 104234, at *51 (N.D. Ill. Aug. 8, 2016) (operator of "honeypot" that existed to solicit and receive robocalls not in zone of interests of TCPA); *Cellco P'ship v. Wilcrest Health Care Mgmt.*, No. 09-3534 (MLC), 2012 U.S. Dist. LEXIS 64407, at *23 (D.N.J. May 8, 2012) (operators of cell networks lacked standing to bring TCPA claims because the "only reason for th[e] volume of calls" was "due to the nature of [the plaintiff's] business"). The zone of interests analysis "applies to all statutorily created causes of action." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014).

*Stoops* is particularly instructive. There, the plaintiff purchased several cell phones with reassigned phone numbers for the sole purpose of claiming that each subsequent call violated the TCPA. 197 F. Supp. 3d at 788. She filed at least eleven TCPA lawsuits in the Western District of Pennsylvania, as well as other suits outside the jurisdiction. *Id.* Defendants argued that, by virtue of her litigation history and experience of manufacturing TCPA suits, plaintiff lacked constitutional standing because she had no injury-in-fact. *Id.* at 795–96.

The court agreed that plaintiff had no Article III standing. *Id.* at 806. Specifically, it found her privacy rights were not violated when she received the calls and she suffered no economic injury based on the calls. *Id.* at 796–806. The court determined that the calls were not

a nuisance, not invasion of privacy, and not unwanted because plaintiff sought the calls in order to file lawsuits. *Id.* at 800. The court further determined the plaintiff could not "manufacture standing" by choosing to spend her money with hopes of being called in violation of the TCPA. *Id.* at 801–02 (citing *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1143 (2013) (holding that a plaintiff "cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending")).

The *Stoops* court further held that plaintiff lacked prudential standing. 197 F. Supp. 3d at 804–05. Specifically, Plaintiff's interests of maintaining "phones with the hope of receiving calls from creditors for the sole purpose of collecting statutory damages," fell outside the zone of interests the statute sought to protect. *Id.* at 805. The *Stoops* court stated "it is unfathomable that Congress considered a consumer who files TCPA actions as a business when it enacted the TCPA." *Id.*; *see also Cellco*, 2012 U.S. Dist. LEXIS 64407, at *25 ("The TCPA, as noted above, anticipates damages on an individual basis because the contemplated plaintiff is an individual natural persons or business <u>with a limited number of phone lines</u>.") (emphasis added).

The facts in *Stoops* are strikingly similar to those before this Court. Based on the allegations made in his multiple TCPA lawsuits, Perrong claims to own at least seventeen phone numbers. *See supra* n.2. And Perrong has filed over 65 TCPA lawsuits, including least twenty in the past 12 months, with essentially identical allegations. It appears he, like Stoops, is obtaining reassigned phone numbers, seeking calls, and then suing for TCPA violations.

But Perrong goes further than Stoops. Perrong's own allegations in the dozens of suits he has filed evidence that Perrong engages in conduct designed to manufacture TCPA claims. For example, in *Perrong v. American Renovations*, No. 2:18-cv-02069, Perrong describes how, after

receiving a phone call from one of the defendants, Southern California Home Improvement Center, he scheduled an appointment to have a representative drive to his home and provide him with an estimate.  *American Renovations*, No. 2:18-cv-02069, ECF No. 1 at ¶¶ 24-26 (E.D. Pa. May 17, 2018).  When the representative, an employee of American Renovation Center, arrived later that same day, Perrong took his business card and told him he was not actually interested in any services.  *Id.* ¶ 26.  Perrong admits that he knew he would receive additional calls as a result of the appointment he requested, because he understood it was the defendants' practice to place follow-up calls after completion of an at-home visit.  *Id.* ¶ 30.  Nevertheless, when Perrong received the expected follow-up calls from American Renovation Center shortly after the appointment, he relied on those calls as the basis to add American Renovation Center to his TCPA complaint, which he filed the following day.  *Id.* ¶¶ 27-30.

Many of Perrong's complaints bear this hallmark of fraudulently requesting services or feigning interest in products to solicit additional phone calls that are then incorporated into his TCPA claims.  In *Perrong v. Secure Auto. Solutions, Inc.*, No. 2:18-cv-02864, Perrong tricked a defendant business into calling Perrong by placing an order with his credit card, then freezing the account so the charge would be declined, thus ensuring the business would call him back.  ECF No. 1, ¶¶ 21-28 (E.D. Pa. July 9, 2018).  Perrong filed suit the same day.  *See also Perrong v. MS Int'l Enters.*, No. 2:18-cv-4760, ECF No. 1, ¶¶ 22-23 (E.D. Pa. Nov. 2, 2018) (plaintiff called number and "confirmed 'interest'" before being transferred to defendant).

Perrong's conduct has become more brazen as his lawsuits have gone unchecked.  Indeed, one recent defendant has filed a counterclaim against Perrong seeking to hold him accountable for his fraudulent conduct.  *Perrong v. Golden Rule Ins. Co.*, No. 1:19-cv-1940,

ECF No. 18 (S.D. Ind. July 16, 2019). There, Perrong filled out an online application and requested a quote for health insurance, providing his cellular phone number. *Id*. ¶ 6. Perrong expressly consented to receiving calls from the defendant using an automated telephone dialing system. *Id*. ¶ 7. When Perrong received a call, he falsely represented that the call was "out of the blue," but nevertheless continued to feign interest in obtaining health insurance. *Id*. ¶ 12. Perrong then sued the defendant for these calls, alleging that he had not consented to receipt of these calls. *Id*. ¶ 40.

The alleged calls Perrong received are hardly unwanted or intrusive—his litigation history makes plain that he was trying to receive the calls and, in many cases, actively solicited them. There is no other way to view Perrong's excessive number of phone lines and corresponding litigation history as anything other than the setting of traps for businesses who market by telephone. The purpose of such conduct is to make Perrong money through TCPA claims. It is constitutionally impermissible to artificially manufacture standing in such a manner. *Clapper*, 133 S. Ct. at 1143. Similarly, prudential standing is lacking, because Perrong's motivation is his own economic self-interest, and therefore, he falls outside the zone of interests Congress sought to protect through passage of the TCPA.

"A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Spokeo*, 136 S. Ct. at 1548. Here, Perrong has no concrete injury—the calls that he alleges harmed him are, in fact, the point of his apparent business. As Perrong lacks an injury-in-fact and alleges "harm" that is outside the zone of Congressional intent, he has no Article III or prudential standing. As such, the Complaint should be dismissed in its entirety.

**B.**     **Individualized Issues Dominate and Preclude Class Certification**

The Complaint makes clear that class treatment is improper due to numerous individualized issues, including whether any particular consumer gave or subsequently revoked consent. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor*, 521 U.S. 591, 623, 117 S. Ct. 2231, 2249 (1997). "[P]redominance may be destroyed if individualized issues will overwhelm those questions common to the class." *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1220 (10th Cir. 2013). "If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2011).

"Prior express consent is a complete defense" to a claim under the TCPA. *Reardon v. Uber Techs., Inc.*, 115 F. Supp. 3d 1090, 1107 (N.D. Cal. 2015). Thus, "[r]esolution of each putative class member's TCPA claim would necessarily involve an individual assessment of whether each class member consented to receive telephone calls on their cellular telephone." *Balthazor v. Cent. Credit Servs., Inc.*, No. 10-cv-62435, 2012 WL 6725872, at *4 (S.D. Fla. Dec. 27, 2012); *Hicks v. Client Servs., Inc.*, No. 07-CIV-61822, 2008 WL 5479111, at *8 (S.D. Fla. Dec. 11, 2008) (holding certification on a TCPA claim was improper because the issue of consent would have to be determined on an individual basis at trial); *Pepka v. Kohl's Dep't Stores, Inc.*, No. 16-cv-4293, 2016 U.S. Dist. LEXIS 186402, at *9-10 (C.D. Cal. Dec. 21, 2016) (striking class allegations at the pleading stage because "no matter what that discovery might show, the fact remains plaintiffs' allegations require an individualized inquiry into questions" of

consent).  Moreover, whether any recipient of a call effectively revoked their consent is similarly an individualized, fact-bound inquiry.  *ACA Int'l v. FCC*, 885 F.3d 687, 709 (D.C. Cir. 2018) (approving FCC rule adopting "reasonable means" standard for evaluating revocation of consent, which considers "the totality of the facts and circumstances").

Thus, Perrong's putative class definitions require that issues of consent be examined for every single member of the classes.  Perrong cannot avoid this obvious failure of his class claims by simply alleging that the class members were called "without their prior express consent," Compl. ¶ 2, because Vivint is entitled to rely on and present evidence of consent with respect to every putative class member.[4]  Because this is an inherently individualized inquiry, class treatment is inappropriate and the class allegations in the Complaint should be dismissed.

### C.    Perrong Has Failed to Sufficiently Plead His Class Claims

Last, Perrong has failed to allege a single fact supporting his class allegations.  Instead, the entire basis for his class claims is that he allegedly received two calls from DSI, approximately two months apart, and two text messages from Vivint within a week of his signing up for service.  The only allegations in Perrong's complaint regarding the calls allegedly

---

[4] To the extent the allegation that the putative class members did not consent could be understood to limit the classes to only nonconsenting recipients, such an argument would render Perrong's proposed classes impermissibly fail-safe, as they otherwise track the elements of liability that Perrong would need to prove on the merits.  *See Taylor v. Universal Auto Group I, Inc.*, No. 3:13-cv-05245KLS, 2014 WL 6654270, at *22 (W.D. Wash. Nov. 24, 2014) (denying motion for class certification in TCPA class action because "inclusion of the 'without prior consent' language in the national class definition makes it a 'failsafe' class, as clearly the issue of consent is central to determining defendant's liability"); *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-cv-846, 2014 WL 1814076, at *4-9 (S.D. Ohio May 7, 2014) (reviewing cases addressing whether proposed TCPA classes defined to include individuals who did not provide prior express consent qualified as fail-safe classes and finding that such classes are impermissible).

received by unnamed class members is a single allegation that Vivint "commissioned automated telemarketing calls to . . . other putative class members without their prior express written consent." Compl. ¶ 2. This bare allegation does not satisfy the requirements of Rule 8, particularly in the context of a putative nationwide class action. "[A] complaint must contain sufficient factual matter . . . to 'state a claim [for] relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 662 (quoting *Twombly*, 550 U.S. at 570). Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79.

As the Tenth Circuit has explained, in evaluating the sufficiency of a claim, courts must disregard all legal conclusions and threadbare recitals of the elements of a claim and consider only the well-pleaded facts. *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018). "If, in the end, a plaintiff's 'well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,' the complaint fails to state a claim." *Id.* The Supreme Court has "caution[ed] that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." *Twombly*, 550 U.S. at 555 n.3; *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.").

This is in accord with other Circuits, which have similarly refused to consider assertions based solely "upon information and belief." *See Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (holding that plaintiff had "not alleged enough facts" to move his claim "from conceivable to plausible" because "we do not have to take as true Mann's allegations 'upon information and belief'") (citing *Twombly*, 550 U.S. 544, 551, 557 (2007)); *Smith v. City of*

*Sumiton*, 578 F. App'x 933, 935 n.4 (11th Cir. 2014) (refusing to consider allegation that other individuals were subjected to the same treatment as the plaintiff because "[w]e do not discuss that allegation because, for purposes of a Rule 12(b)(6) motion to dismiss, we do not have to take as true allegations based merely 'upon information and belief'").

At least one district court has dismissed the class claims in a TCPA case for this very reason.  *See, e.g.*, *Daisy, Inc. v. Pollo Operations, Inc.*, No. 14-564-FtM-38CM, 2015 U.S. Dist. LEXIS 39265, at *13 (M.D. Fl. Mar. 27, 2015) (dismissing class claims where plaintiff merely recited "the elements of a class action and stat[ed] it **believes** forty (40) other businesses received the same facsimiles it received."). The *Daisy* court found such pleading insufficient because "Plaintiff does not provide the Court with any factual basis other than a speculation based upon the Plaintiff's information and belief that some forty other businesses also received the alleged facsimiles in violation of the TCPA."  *Id.* at *14.  Thus, the court held that "[t]he Plaintiff has not pled a sufficient factual basis to support a plausible Rule 23 class action claim at this point in the proceedings."  *Id.*

Like the plaintiff in *Daisy*, all of Perrong's class allegations rely solely on speculation. Perrong's complaint contains no factual allegations regarding calls received by other class members.  Perrong's only allegation regarding the number of people he claims Vivint or DSI called is a conclusory claim that "[t]he potential class members number at least in the thousands," although Perrong offers no factual support or explanation of how he arrived at this figure.  Compl. ¶ 68.  Indeed, Perrong has offered no allegation or evidence that anyone other than himself belongs to the class.  Perrong cannot use an entirely speculative class action claim

as a bludgeon in an effort to obtain a more lucrative settlement from Vivint.  Perrong's class action claims must be dismissed.

## V.    CONCLUSION

For the foregoing reasons, Vivint respectfully requests that Perrong's complaint be dismissed or that the class allegations be stricken.

DATED this 3rd day of October, 2019.

/s/ Nathan R. Marigoni
Melanie J. Vartabedian, Esq.
Nathan R. Marigoni, Esq.
BALLARD SPAHR LLP
Attorneys for Defendant, Vivint, Inc.