IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JOSEPH BARRETT, CRAIG CUNNINGHAM and ANDREW PERRONG, on behalf of themselves and others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>VIVINT, INC., JOHN DOE CORPORATION D/B/A NATIONAL SOLAR PROGRAM and DSI DISTRIBUTING, INC. d.b.a DSI SYSTEMS<br><br>Defendants. | Case No. 2:19-cv-00568-CW-CMR<br><br>District Judge Clark Waddoups<br><br>Magistrate Judge Cecilia M. Romero |

**Preliminary Statement**

1.      Plaintiffs Joseph Barrett, Craig Cunningham and Andrew Perrong ("Plaintiffs") bring this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2.      Mr. Barrett alleges that Vivint, Inc. ("Vivint") commissioned pre-recorded telemarketing calls to his number on the National Do Not Call Registry and to other putative class members without their prior express written consent. The calls were sent pursuant to an

agreement between Vivint and John Doe Corporation, who identified itself as "National Solar Program" on the call.

3.      Mr. Perrong alleges that Vivint commissioned automated telemarketing calls to his number on the National Do Not Call Registry and to other putative class members without their prior express written consent. The calls were sent pursuant to an agreement between Vivint and DSI Distributing, Inc. d.b.a. DSI Systems. Despite Mr. Perrong contacting Vivint about the calls, Vivint then placed automated calls to him directly, including an automated text message sent to him after he filed this lawsuit.

4.      Mr. Cunningham, despite having previously alerted Vivint to unlawful calling activities of DSI, also received an automated telemarketing call on his cellular telephone in alleged violation of the TCPA from DSI regarding Vivint services in February of 2019. Mr. Cunningham also received unsolicited text messages from Vivint directly, even after he had explicitly opted out of such text messages and after Vivint itself confirmed to him that he was supposedly on their internal do not call list.

5.      Also in violation of the TCPA, Vivint failed to maintain adequate procedures to engage in telemarketing. This includes the creation, use and accurate maintenance of an internal do not call list.

6.      The Plaintiffs and putative class members never consented to receive these calls. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, The Plaintiffs bring this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Vivint.

7.      A class action is the best means of obtaining redress for the Defendants' wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

### Parties

8.      Plaintiff Joseph Barrett is a resident of the Commonwealth of Massachusetts.

9.      Plaintiff Andrew Perrong currently resides in Pennsylvania.

10.     Plaintiff Craig Cunningham is a resident of Texas.

11.     Defendant Vivint, Inc. is a Utah corporation with its principal place of business in Provo, Utah.

12.     Defendant DSI Distributing, Inc. d.b.a DSI Systems is an Indiana corporation with its principal place of business in Dallas, TX. DSI Systems was engaged by Vivint in this District to provide telemarketing services into this District and throughout the nation.  DSI is also registered to do business in Utah.

13.     Defendant John Doe Corporation, who identified itself as "National Solar Program" on the call to Mr. Barrett, is a telemarketing vendor for Vivint and contracted with Vivint in this District to originate new customers for them through telemarketing. John Doe Corporation was engaged by Vivint in this District to provide telemarketing services into this District and throughout the nation.

### Jurisdiction & Venue

14.     The Court has federal question subject matter jurisdiction over these TCPA claims.  *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

15.     The Court has personal jurisdiction over DSI and John Doe Corporation because they engaged in telemarketing conduct into this District and because they entered into a contract with Vivint for telemarketing in this District.

16.     Venue is proper under 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls at issue were commissioned from this District.

## TCPA Background

17.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]"  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits Automated Telemarketing Calls to Cellular Telephones and Numbers Charged Per Call.

18.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service or to a number that is charged per call.  *See* 47 U.S.C. § 227(b)(1)(A).  The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A).  *See* 47 U.S.C. § 227(b)(3).

19.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a

greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

20.     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

21.     In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

The National Do Not Call Registry

22.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).  A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator."  *Id.*

23.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry.  47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

The TCPA's Internal Do Not Call List Requirements

24.      The TCPA's implementing regulations prohibit any company from initiating any telemarketing call unless the company has implemented internal procedures for maintaining a list of persons who request not to be called by the entity.  47 C.F.R. 64.1200(d).  Such internal procedures must meet certain minimum requirements to allow the entity to initiate telemarketing calls.  47 C.F.R. 64.1200(d)(1)-(6).

25.     This includes the requirements that:

- "Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list" (47 C.F.R. 64.1200(d)(1));

- "Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list" (47 C.F.R. 64.1200(d)(2));

- Persons or entities making telemarketing calls must honor do-not-call requests within a reasonable time, not to exceed thirty days, from the date such request is made (47 C.F.R. 64.1200(d)(3));

- "A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls.

A do-not-call request must be honored for 5 years from the time the request is made." (47 C.F.R. 64.1200(d)(6)).

26.     Pursuant to 47 C.F.R. 64.1200(e), the rules set forth above in 47 C.F.R. 64.1200(d) are "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers…."

<u>The Growing Problem of Automated Telemarketing</u>

27.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

28.     "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

29.     In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

30.     *The New York Times* reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018), https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-can-do-about-them-1530610203.

31.     A technology provider combating robocalls warned that nearly half of all calls to cell phones next year will be fraudulent. Press Release, First Orion, Nearly 50% of U.S. Mobile Traffic Will Be Scam Calls in 2019 (Sept. 12, 2018), https://www.prnewswire.com/news-releases/nearly-50-of-us-mobile-traffic-will-be-scam-calls-by-2019-300711028.html

### Factual Allegations

<u>Call to Mr. Barrett</u>

32.     Plaintiff Barrett is a "person" as defined by 47 U.S.C. § 153(39).

33.     Mr. Barrett's telephone number, (781) 315-XXXX, is assigned to a cellular telephone service.

34.     Mr. Barrett's telephone number has been on the National Do Not Call Registry for more than a year prior to the call at issue.

35.     On July 16, 2019, Mr. Barrett received a pre-recorded call on his cellular telephone.

36.     The call was made with an ATDS, as that term is defined by the TCPA.

37.     The Plaintiff knew the call were made with an ATDS because:

    a.   The call used a pre-recorded voice;

    b.   The call came from a spoofed caller ID;

    c.   The call was commercial in nature; and

    d.   Right before the call connected with a live individual there was a distinctive

"click" sound, associated with an automated dialer.

38.     When Mr. Barrett connected with a live individual, he was informed that he was speaking with the "National Solar Program".

39.     To identify an actual company, Mr. Barrett engaged with the telemarketer.

40.     The telemarketing company set an appointment for Mr. Barrett.

41.     Mr. Barrett then received a confirmation from a representative that said he was calling from Vivint regarding the call from National Solar Program.

42.     To confirm his association with Vivint, Mr. Barrett received an e-mail from "John Stanasek", jstanasek@vivintsolar.com.

43.     Vivintsolar.com is a domain registered and owned by the Defendant.

44.     John Stanasek is a District Solar Manager for Vivint in Wilmington, MA.

<u>Calls to Mr. Perrong</u>

45.     Plaintiff Perrong is a "person" as defined by 47 U.S.C. § 153(39).

46.     Mr. Perrong's telephone number, (215) 947-XXXX, is assigned to a service for which he is charged for the call on a per-minute basis and text message on a per-character basis.

47.     Mr. Perrong's telephone number, (215) 947-XXXX, has been on the National Do Not Call Registry and Pennsylvania Do Not Call Registry for more than a year prior to the calls at issue.

48.     Mr. Perrong's telephone number, (215) 947-XXXX, is used for residential purposes only.

49.     Mr. Perrong's telephone number, (215) 947-XXXX, is not associated with any business.

50.     On April 4 and June 5, 2019, Mr. Perrong received automated telemarketing calls from DSI.

51.     Mr. Perrong ignored the first call but answered the second.

52.     These calls were made with an ATDS, as that term is defined by the TCPA.

53.     The Plaintiff knew the calls were made with an ATDS because:

    a.  The call had dead noise when he answered;

    b.  The calls came from a spoofed caller ID for his local electric utility;

    c.  The call was commercial in nature; and

    d.  Right before the call connected with a live individual there was a distinctive "pop" sound, which the Plaintiff recognizes as associated with a predictive dialing system from ViciDial.

54.     The Caller ID for the calls, (215) 328-9647, is a "spoofed" number for Plaintiff's electric utility, PECO Energy.

55.     A telemarketing sales representative eventually came on the line from DSI and promoted Vivint's products.

10

56.     The representative said he was calling from Vivint.

57.     The representative then transferred Mr. Perrong to another representative from Vivint.

58.     In order to confirm Vivint's involvement, Mr. Perrong confirmed an appointment with Vivint and provided his credit card number.

59.     As a result of the illegal call, an appointment with Vivint was scheduled and Mr. Perrong's credit card was charged by Vivint.

60.      On June 5, 2019, the same day, Mr. Perrong communicated to compliance counsel for Vivint that he was illegally called and wanted to receive no more contacts.

61.     Perrong received a confirmation e-mail on June 6 and a follow up on June 10.

62.     Despite these contacts, on June 12 and June 13, 2019 Vivint contacted Mr. Perrong directly.

63.     The calls were automated text messages regarding Vivint services.

64.     A text message is a call for purposes of the TCPA.

65.     The text messages were from the SMS short code 80565.

66.     A text message containing an SMS short code is characteristic of a message sent using an ATDS that dials a large volume of telephone numbers from a prepared list.

67.     In fact, despite the filing of this lawsuit, Mr. Perrong was sent another text message on September 25, 2019, which included the following advertisement:

> Still in contract with your alarm company? We'll pay it off. Seriously. (Up to $1,000 of it)
> Want the best Smart Home deal? Today is the day.
> Click to Sign up with the largest Smart Home provider today-

https://myvivintdeals.com

68.     This text message was from the SMS short code 797979.

69.     In fact, this SMS code is for CallFire, a company that promotes its ability to have a user upload a list of numbers and automatically dial them.


Calls to Mr. Cunningham

70.     Plaintiff Cunningham is a "person" as defined by 47 U.S.C. § 153(39).

71.     Mr. Cunningham's telephone number, (215) 947-XXXX, is assigned to a cellular telephone service.

72.     Mr. Cunningham's telephone number, (215) 947-XXXX, is used for residential purposes only.

73.     Mr. Cunningham's telephone number, (215) 947-XXXX, is not associated with any business.

74.     On February 25, 2019, Mr. Cunningham received an automated telemarketing call from DSI for Vivint.

75.     These calls were made with an ATDS, as that term is defined by the TCPA.

76.     The Plaintiff knew the calls were made with an ATDS because:

   a.   The call had dead noise when he answered;

   b.   The calls came from a spoofed caller ID;

   c.   The call was commercial and generic in nature; and

   d.   The Caller ID for the call was local and "spoofed" number, (214) 612-6460.

77.     A telemarketing sales representative eventually came on the line from DSI and promoted Vivint's products.

78.     Mr. Cunningham confirmed that Vivint was involved in the DSI call when Vivint contacted him directly on February 26, 2019 to confirm the appointment.

79.     Mr. Cunningham informed Vivint that he was not interested.

80.     However, Vivint continued to telemarket to Mr. Cunningham directly.

81.     On July 30, 2019, Mr. Cunningham received this text message on his cellular telephone:

> (Vivint Will Buy It) Want Vivint but under contract with another company? Good. We'll buy it.
>
> Go with a different company and regret it? Good. We'll buy it.
>
> Sign up with Vivint today.
>
> Click here to get started-
> https://tapit.us/PzCGc
> https://eztxt.s3-us-west-1
> .amazonaws.com/546711/mms
> /July30thPromo_1564497284
> .jpg

82.     Clicking on the link provided in the text message displays the following advertisement:



83.     Mr. Cunningham received a text message to the same cellular telephone number

on August 2, 2019:



84.     A text message is a call for purposes of the TCPA.

85.     The text message was from the SMS short code 474747.

86.     A text message containing an SMS short code is characteristic of a message sent using an ATDS that dials a large volume of telephone numbers from a prepared list.

87.     In fact, this SMS code is for CallFire, a company that promotes its ability to have a user upload a list of numbers and automatically dial them.

88.     In 2018, Mr. Cunningham has previously complained to Vivint about a series of telemarketing calls, including from DSI.

89.     Mr. Cunningham was informed in November of 2018 that his telephone number was going to be added to the Vivint Internal Do Not Call list

90.     However, Vivint has since contacted Mr. Cunningham.

91.     As such, Vivint does not appear to have an Internal Do Not Call list.

92.     Even though Mr. Cunningham had previously been told that his number had been placed on the Internal Do Not Call List, he responded to the August 2, 2019 text requesting to no longer be contacted:



93.     As shown above, Vivint also acknowledged the request.

94.     Despite this unequivocal statement to stop receiving contacts, Mr. Cunningham

was sent another text message on September 25, 2019:



95.       Plaintiffs and the other call recipients were harmed by these calls. They were

temporarily deprived of legitimate use of their phones because their phone lines were tied up

during the telemarketing calls and their privacy was improperly invaded. Moreover, these calls

injured Plaintiffs and the other call recipients because they were frustrating, obnoxious,

annoying, were a nuisance and disturbed the solitude of Plaintiffs and the class. Furthermore, the

calls injured Plaintiffs because in many cases Plaintiffs were charged per minute or per character

for the messages sent.

96.    Plaintiffs and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because their phone lines was tied up during the telemarketing calls and their privacy was improperly invaded. Moreover, these calls injured Plaintiffs and the other call recipients because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiffs and the class. Furthermore, the calls injured Plaintiffs because in many cases Plaintiffs were charged per minute or per character for the messages sent.

### Vivint's Liability for DSI's and John Doe's Conduct

97.    For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

98.    In its January 4, 2008 ruling, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.  *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

99.    In fact, the Federal Communication Commission has instructed that sellers such as Vivint may not avoid liability by outsourcing telemarketing to third parties, such as the co-defendants:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer

that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

100.    On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

101.    The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

102.    The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

[A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.  Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on

---

[1]    *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

FCC Rcd at 6592 (¶ 46).

103.     DSI is a Vivint Authorized Dealer.

104.     Vivint is liable for the telemarketing calls that were initiated by DSI.

105.     Vivint hired DSI to originate new business using automated telemarketing calls.

106.     Vivint could have restricted DSI from using automated telemarketing, but it did not.

107.     Vivint also accepted the benefits of DSI's illegal telemarketing by accepting live transfers of leads directly from DSI despite the fact that those leads were generated through illegal telemarketing.

108.     Vivint permitted DSI to place calls using Vivint's name as the provider of services without mentioning DSI's name during the call.

109.     Vivint had absolute control over whether, and under what circumstances, it would accept a customer.

110.     Vivint determined the parameters and qualifications for customers to be transferred to a live Vivint representative and required DSI to adhere to those requirements.

111.     Vivint knew (or reasonably should have known) that DSI was violating the TCPA on its behalf and failed to take effective steps within its power to force the telemarketer to cease that conduct.  Any reasonable seller that accepts telemarketing call leads from lead generators would, and indeed must, investigate to ensure that those calls were made in compliance with TCPA rules and regulations.

112.     By having DSI initiate the calls on its behalf to generate new business, Vivint "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

113.     DSI transferred customer information directly to Vivint.  Thus, the company that Vivint hired has the "ability . . . to enter consumer information into the seller's sales or customer systems," as discussed in the May 2013 FCC Ruling.

114.     DSI also had the right to bind Vivint in contract, a hallmark of agency.

115.     The John Doe Corporation is also believed to be a Vivint Authorized Dealer and is subject to the same control from Vivint that DSI is.

116.     Vivint was on prior knowledge of DSI's illegal calling conduct, as Mr. Cunningham had previously complained to Vivint about telemarketing calls made by DSI.

117.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46).  Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

### Class Action Allegations

118.     As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

119.     The Classes of persons Plaintiffs propose to represent is tentatively defined as:

National Do Not Call Registry Class

> All persons within the United States to whom: (a) Defendants and/or a third party acting on their behalf, made at least two telephone solicitation calls during a 12 month period; (b) to a residential telephone number; (c) that had been listed on the National Do Not Call Registry for more than 31 days prior to the first call; (d) promoting the goods or services of the Defendants; (e) at any time in the period that begins four years before the date of filing this Complaint to trial.

Automated Call Class

> All persons within the United States to whom: (a) Defendants and/or a third party acting on its behalf, made one or more non-emergency telephone calls; (b) to their cellular telephone number or number that is charged per call; (c) using an automatic telephone dialing system or an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

Internal Procedures Class

> All natural persons within the United States to whom: (a) Defendant and/or a third party acting on their behalf, made two or more calls in a twelve-month period; (b) which constitute telemarketing; (c) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

120.    Excluded from the Classes are counsel, the Defendants, and any entities in which the Defendant has a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

121.    The Classes as defined above are identifiable through phone records and phone number databases.

122.    The potential Class's members number at least in the thousands.  Individual joinder of these persons is impracticable.

123.    Plaintiff Perrong is a member of all of the Classes.

124.    Plaintiff Cunningham is a member of the Automated Call Class and Internal Procedures Class.

125.    Plaintiff Barrett is a member of the Automated Call Class.

126.    There are questions of law and fact common to Plaintiffs and to the proposed Classes, including but not limited to the following:

a.   Whether Defendant violated the TCPA by using automated calls to contact putative class members cellular telephones;

b.   Whether Defendants' agent(s) initiated calls without obtaining the recipients' prior express invitation or permission for the call;

c.   Whether Vivint is vicariously liable for the telemarketing conduct of its agent(s); and

d.   Whether the Plaintiff and the class members are entitled to statutory damages because of Defendants' actions.

127.    Plaintiffs' claims are typical of the claims of class members.

128.    Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the Classes, they will fairly and adequately protect the interests of the Classes, and they are represented by counsel skilled and experienced in class actions, including TCPA class actions.

129.    Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

130.    The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

131.    Plaintiffs are not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

**Legal Claims**

**Count One:**
**Violation of the TCPA's Do Not Call provisions**

132.    Plaintiff Perrong incorporates the allegations from all previous paragraphs as if fully set forth herein.

133.    Defendants violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2) by initiating multiple solicitation calls within a 12-month period to residential telephone numbers despite their registration on the National Do Not Call Registry, without signed, written prior express invitation or permission.

134.    The Defendants' violations were negligent and/or willful.

**Count Two:**
**Violation of the TCPA's Internal Procedures Provision**

135.    Plaintiffs Perrong and Cunningham incorporate the allegations from all previous paragraphs as if fully set forth herein.

136.    The foregoing acts and omissions of the Defendant constitute violations of the FCC's regulations implementing subsection 227(c) of the TCPA which prohibit anyone from making any call for telemarketing purposes to any residential or wireless telephone subscriber unless the caller has implemented the required minimum procedures for maintaining a list of

persons who do not want to receive calls made by or on behalf of such person or entity. 47 C.F.R. 64.1200(d).

137. The Defendant failed to maintain an internal do-not-call list.

138. The Defendant failed to train its personnel as to the existence of and/or use of a do-not-call list.

139. The Defendant did not honor do-not-call requests, much less for five years as required.

140. The Defendant's violations were willful and/or knowing.

**Count Three:**
**Violation of the TCPA's Automated Call provisions**

141. Plaintiffs incorporate the allegations from all previous paragraphs as if fully set forth herein.

142. The Defendants violated the TCPA by (a) initiating automated telephone solicitations to telephone numbers, or (b) by the fact that others made those calls on its behalf. *See* 47 U.S.C. § 227(b).

143. The Defendants' violations were willful and/or knowing.

144. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making calls, except for emergency purposes, to any telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

**Relief Sought**

WHEREFORE, for himself and all class members, Plaintiffs request the following relief:

A.     Injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making calls, except for emergency purposes, to any telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

B.     Because of Defendants' violations of the TCPA, Plaintiffs seek for themselves and the other putative Class members $500 in statutory damages per violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3); 47 U.S.C. § 227(c)(5).

D.     An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

E.     Such other relief as the Court deems just and proper.

**Plaintiffs request a jury trial as to all claims of the complaint so triable.**

Dated: October 8, 2019

Plaintiff,
By Counsel,

/s/ *Anthony I. Paronich*
Anthony I. Paronich (*pro hac vice*)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
508.221.1510
E-mail: anthony@paronichlaw.com

Jared B. Pearson (Utah Bar No. 12200)
Pearson Law Firm, PLLC
9192 South 300 West, Suite 35
Sandy, UT 84070
Telephone: 801.888.0991
E-mail: jared@pearsonlawfirm.org

Brian K. Murphy (*pro hac vice*)
Jonathan P. Misny (*pro hac vice*)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
Telephone: 614.488.0400
Facsimile: 614.488.0401
E-mail: murphy@mmmb.com
         misny@mmmb.com

## CERTIFICATE OF SERVICE

I, hereby certify that on October 8, 2019, I filed the foregoing with the Court's CM/ECF system, which served the same on the counsel of record.

/s/ *Anthony Paronich*
Anthony Paronich