Melanie J. Vartabedian (#10148)
Nathan R. Marigoni (#14885)
BALLARD SPAHR LLP
One Utah Center, Suite 800
201 South Main Street
Salt Lake City, Utah 84111-2221
Telephone: (801) 531-3000
Facsimile: (801) 531-3001
vartabedianm@ballardspahr.com
marigonin@ballardspahr.com

Attorneys for Defendant, Vivint, Inc.

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **JOSEPH BARRETT, CRAIG CUNNINGHAM and ANDREW PERRONG, on behalf of themselves and others similarly situated,**<br><br>          **Plaintiff,**<br><br>v.<br><br>**VIVINT, INC., JOHN DOE CORPORATION D/B/A NATIONAL SOLAR PROGRAM and DSI DISTRIBUTING, INC. d.b.a DSI SYSTEMS,**<br><br>          **Defendants.** | **DEFENDANT VIVINT, INC'S MOTION TO DISMISS AMENDED COMPLAINT OR TO STRIKE PLAINTIFFS' CLASS ALLEGATIONS**<br><br><br>**Case No.:  2:19-cv-00568-CW-CMR**<br><br>**District Judge Clark Waddoups**<br>**Magistrate Judge Cecilia M. Romero** |

Pursuant to Rule 12(b)(1), 12(b)(6), 12(f) and 23(d) of the Federal Rules of Civil

Procedure, Defendant Vivint, Inc. ("Vivint") hereby moves the Court to dismiss the Amended

Complaint filed by Plaintiffs Joseph Barrett ("Barrett"), Craig Cunningham ("Cunningham"),

and Andrew Perrong ("Perrong") (collectively, "Plaintiffs") or, alternatively, to strike the class

allegations from Plaintiffs' Amended Complaint.

## I.    INTRODUCTION

This is a case brought by professional plaintiffs who have made a business of filing

claims under the Telephone Consumer Protection Act ("TCPA").  Since 2015, Plaintiff Perrong

has filed over 65 TCPA complaints and, in the past year, has filed at least twenty TCPA

complaints in federal courts in Florida, Georgia, Illinois, Indiana, Nevada, Pennsylvania, and

now, Utah.[1]  Every Complaint is based on allegations that the defendant placed unauthorized

---

[1] *See Perrong v. Nordic Energy Servs., LLC*, No. 1:19-cv-6745 (N.D. Ill. Oct. 11, 2019); *Perrong v. ReWeb Real Estate*, No. 2:19-cv-04228 (E.D. Pa. filed Sept. 12, 2019); *Perrong v. Ox Car Care*, No. 2:19-cv-03224 (E.D. Pa. filed July 24, 2019); *Perrong v. Carguardian Warranty*, No. 2:19-cv-02770 (E.D. Pa. June 25, 2019); *Perrong v. Prosper Trading*, No. 1:19-cv-03871 (N.D. Ill. filed June 10, 2019); *Perrong v. Direct Energy LP*, No 2:19-cv-02373 (E.D. Pa. filed May 31, 2019); *Perrong v. Medical Guardian LLC*, No. 2:19-cv-02371 (E.D. Pa. filed May 31, 2019); *Frey et al v. Great American Power*, No. 1:19-cv-02450 (N.D. Ga. Filed May 29, 2019); *Perrong v. Prosperity RE & Invest* No. 2:19-cv-02293 (E.D. Pa. filed May 28, 2019); *Perrong v. Golden Rule Insurance Co.*, No. 1:19-cv-01940 (S.D. Ind. Filed May 14, 2019); *Perrong v. Lynn* No. 2:19-cv-02000 (E.D. Pa. filed May 7, 2019); *Perrong v. Harris & Harris LTD*, No. 1:19-cv-2425 (N.D. Ill. filed Apr. 10, 2019); *Perrong v. Rushmore Energy, LLC* No. 2:19-cv-01367 (E.D. Pa. filed Apr. 1, 2019); *Brienes et al v. Pro Custom Solar LLC*, No. 3:19-cv-00353 (M.D. Fla. Filed Mar. 27, 2019); *Perrong v. American Water Concepts, LLC*, No. 2:19-cv-00931 (E.D. Pa. Mar. 5, 2019); *Perrong v. Sperian Energy Corp.*, No. 2:19-cv-00115 (D. Nev. Filed Jan. 21, 2019); *Perrong v. Selltell Inc*, No.2:19-cv-00191 (E.D. Pa. filed Jan. 11, 2019); *Perrong v. Stars & Stripes Chimney Servs., LLC*, No. 2:19-cv-00039 (E.D. Pa. filed Jan. 4, 2019); *Perrong v. Space Coast Marketing,* No. 2:18-cv-5510 (E.D. Pa. filed Dec. 21, 2018); *Perrong v. Ox Car Care Inc.*, No. 2:18-cv-05027 (E.D. Pa. filed Nov. 20, 2018); Perrong v. MS Int'l Enters., No. 2:18-cv-04760 (E.D. Pa. filed Nov. 2, 2018); *Perrong v. Texpo Power, LP*, No. 2:18-cv-3213 (E.D. Pa. filed July 27, 2018); *Perrong v. Secure Auto. Solutions, Inc.*, No. 1:18-cv-02864 (E.D. Pa filed July 9, 2018); *Perrong v. Cardo Windows Inc.*, No. 1:18-cv-11309 (D.N.J. filed July 3, 2018); *Perrong v. Advanced Brokerage Concepts LLC*, No. No. 2:18-cv-02624 (E.D. Pa. filed June 21, 2018); *Perrong v. McAveney*, No. 2:18-cv-02524 (E.D. Pa. filed June 15, 2018); *Perrong v. Capital Comeback LLC*, No. 3:18-cv-10017 (D.N.J. filed June 1, 2018); *Perrong v. Voisel LLC*, No. 2:18-cv-02227 (E.D. Pa. filed May 29, 2018); *Perrong v. Am. Renovation Ctr. Inc.*, No. 2:18-cv-02069 (E.D. Pa. filed May 17, 2018); *Perrong v. Liberty Power Corp.*, No.

(continued...)

_____
(...continued)
1:18-cv-712 (D. Del. filed May 11, 2018); *Perrong v. Washington Inv. Grp. LLC*, No. 2:18-cv-01934 (E.D. Pa. filed May 8, 2018); *Perrong v. Macy's Inc.*, No. 2:18-cv-01382 (E.D. Pa. filed Apr. 2, 2018); *Charvat v. Santanna Nat. Gas Corp.*, No. 1:18-cv-2310 (N.D. Il. filed Mar. 30, 2018); *Perrong v. Direct Client Servs.*, No. 2018-02847 (Pa. Ct. Com. Pl., Montgomery Cnty. filed Feb. 2, 2018); *Perrong v. Choice Energy LLC*, No. 2017-28953 (Pa. Ct. Com. Pl., Montgomery Cnty. filed Dec. 18, 2017); *Perrong v. DNG Complete Home Improvement Corp.*, No. 2017-28894 (Pa. Ct. Com. Pl.,Montgomery Cnty. filed Dec. 15, 2017); *Perrong v. Attorneys Tax Relief LLC*, No. 2017-28483 (Pa. Ct. Com. Pl., Montgomery Cnty. filed Dec. 8, 2017); *Perrong v. Penn Foster Edu. Grp. Inc.*, No. 2017-28362 (Pa. Ct. Com. Pl., Montgomery Cnty. filed Dec. 8, 2017); *Perrong v. Smith*, No. 2017-28359 (Pa. Ct. Com. Pl., Montgomery Cnty. filed Dec. 8, 2017); *Perrong v. HBW Leads LLC*, No. 2:17-cv-05442 (E.D. Pa. filed Dec. 4, 2017); *Perrong v. Consumer Advocacy Ctr. Inc.*, No. 2017-27877 (Pa. Ct. Com. Pl., Montgomery Cnty. filed Nov. 29, 2017); *Perrong v. H&R Chimney Corp.*, No. 2017-27206 (Pa. Ct. Com. Pl., Montgomery Cnty. Filed Nov. 17, 2017); *Perrong v. William Novick Agency LLC*, No. 2:17-04172 (E.D. Pa. filed Sept. 19, 2017); *Perrong v. TranzVia LLC*, No. 2:17-cv-03664 (E.D. Pa. filed Aug 14, 2017); *Perrong v. Sussman Inc.*, No. 2:17-cv-03511 (E.D. Pa. filed Aug. 7, 2017); *Perrong v. Perlow*, No. CV-224-2017 (Pa. Magis. Dist. Ct. 38-2-08 filed Aug. 3, 2017); *Perrong v. Lednor Corp.*, No. 2:17-cv-03452 (E.D. Pa. filed Aug. 2, 2017); *Perrong v. Ripple*, No. CV-221-2017 (Pa. Magis. Dist. Ct. 38-2-08 filed Aug. 2, 2017); *Perrong v. Smith*, No. 2:17-cv-03366 (E.D. Pa. filed July 27, 2017); *Perrong v. Just Energy*, No. CV-195-2017 (Pa. Magis. Dist. Ct. 38-2-08 filed July 7, 2017); *Perrong v. Greenlight Energy Inc.*, No. CV-194-2017 (Pa. Magis. Dist. Ct. 38-2-08 filed July 7, 2017); *Perrong v. Verizon Commc'ns. Inc.*, No. CV-181-2017 (Pa. Magis. Dist. Ct. 38-2-08 filed June 21, 2017); *Perrong v. Ins. Resource Grp.*, No. CV-176-2017 (Pa. Magis. Dist. Ct. 38-2-08 filed June 21, 2017*); Perrong v. Hamilton*, No. CV-164-2017 (Pa. Magis. Dist. Ct. 38-2-08 filed June 8, 2017); *Perrong v. MJB Mktg. Inc.*, No. CV-159-2017 (Pa. Magis. Dist. Ct. 38-2-08 filed May 31, 2017); *Perrong v. Arevalo*, No. CV-146-2017 (Pa. Magis. Dist. Ct. 38-2-08 filed May 18, 2017); *Perrong v. Elite Chimney Sols. Inc.*, No. 2:17-cv-01512 (E.D. Pa. filed Apr. 3, 2017); *Perrong v. FIG Capital LLC*, No. CV-167-2016 (Pa. Magis. Dist. Ct. 38-2-08 filed July 22, 2016); *Perrong v. Trademark Publ. Inc.*, No. CV-140-2016 (Pa. Magis. Dist. Ct. 38-2-08 filed June 16, 2016); *Perrong v. Merchant Funding Sols. LLC*, No. CV-125-2016 (Pa. Magis. Dist. Ct. 38-2-08 filed June 7, 2016); *Perrong v. Student Debt Doctor LLC*, No. CV-109-2016 (Pa. Magis. Dist. Ct. 38-2-08 filed May 18, 2016); *Perrong v. Aspen Home Improvements Inc.*, No. 5:15-cv-04023 (E.D. Pa. filed July 21, 2015); *Perrong v. The Student Loan Grp.*, No. 2:15-cv-02634 (E.D. Pa. filed May 11, 2015); *Perrong v. 800 Repairs Corp.*, No. CV-128-2015 (Pa. Magis. Dist. Ct. 38-2-08 filed May. 14, 2015); *Perrong v. Risen Capital LLC*, No. 2:15-cv-01807 (E.D. Pa. filed Apr. 7, 2015); *Perrong v. Maximum Security Alarm Inc.*, No. CV-8-2015 (Pa. Magis. Dist. Ct. 38-2-08 filed Jan. 14, 2015); *Perrong v. Frontier Utils. Ne. LLC*, No. CV-7-2015 (Pa. Magis. Dist. Ct. 38-2-08 filed Jan. 14, 2015).

calls to one of the seventeen phone numbers Perrong claims to own.[2]  Nearly all of these suits

have settled quickly, with Perrong extracting a cash settlement from the alleged defendant.

Perrong's long-running and prolific filing streak and resulting cash settlements demonstrate that

Perrong has made a business of TCPA litigation.

Plaintiff Cunningham is an equally prolific professional TCPA litigant.  Cunningham

began his litigation career with FDCPA litigation, but has since moved on to TCPA claims.  A

search of PACER shows that Cunningham has filed nearly 150 cases in federal court, the vast

majority of which are TCPA cases.  Cunningham has filed 23 TCPA cases since January 1,

2019.[3]  Cunningham maintains at least eight phone numbers from which he operates his TCPA

---

[2] Perrong has identified in public court filings at least the following phone numbers he claims to own: 215-207-9084, 215-208-9484, 215-322-7485, 215-338-3458, 215-436-9476, 215-634-7722, 215-725-1530, 215-757-0689, 215-791-6957, 215-800-0199, 267-225-8277, 267-935-9013, 215-947-1920, 301-920-1621, 610-626-7800, 856-829-8229, 888-329-0305.  Perrong has filed TCPA claims based on calls to six of these numbers in the past 12 months.

[3] *Cunningham v. Plivo, Inc*., 4:19-cv-06605 (N.D. Cal. filed Oct 15, 2019); *Cunningham v. Consolidated World Travel, Inc*., 0:19-cv-62504 (S.D. Fla. filed Oct 07, 2019); *Cunningham v. Central Billing LLC*, 4:19-cv-00707 (E.D. Tex. filed Sep 29, 2019); *Cunningham v. Creative Edge Marketing LLC*, 4:19-cv-00669 (E.D. Tex.  filed Sep 16, 2019); Cunningham v. Vanderbilt University, 3:19-cv-00788 (M.D. Tenn. filed Sep 06, 2019); *Cunningham v. GHS Interactive Sec., LLC*, 2:19-cv-06599 (C.D. Cal.  filed Jul 30, 2019); *Cunningham v. Fling.com, LLC*, 1:19-cv-23073 (S.D. Fla filed Jul 24, 2019); *Cunningham v. Smithkey Auto Indus., Inc.*, 4:19-cv-00541 (E.D. Tex. filed Jul 22, 2019); *Cunningham v. Torkzadeh Law Firm PC*, 2:19-cv-06327 (C.D. Cal.  filed Jul 22, 2019); *Cunningham v. AB Solution Processing LLC*, 4:19-cv-00501 (E.D. Tex. filed Jul 09, 2019); *Cunningham v. Wilhelm Law Group LLC*, 4:19-cv-00493 (E.D. Tex. filed Jul 05, 2019); *Cunningham v. Manasseh Jordan Ministries, Inc*., 4:19-cv-00494 (E.D. Tex. filed Jul 05, 2019); *Cunningham v. Technologic USA, Inc.*, 2:19-cv-05597 (E.D. Tex. filed Jun 27, 2019); *Cunningham v. Kealy*, 4:19-cv-00458 (E.D. Tex. filed Jun 19, 2019); *Cunningham v. Grand Incentives, Inc.*, 4:19-cv-00350 (E.D. Tex. filed May 13, 2019); *Cunningham v. Foster and Monroe LLC*, 4:19-cv-00351 (E.D. Tex. filed May 13, 2019); *Cunningham v. Patterson*, 1:19-cv-00409 (W.D. Tex. filed Apr 11, 2019); *Cunningham v. Quogen LLC*, 4:19-cv-00237 (E.D. Tex. filed Mar 27, 2019); *Cunningham v. Hood*, 3:19-cv-00743 (N.D. Cal. filed Feb 11, 2019); *Cunningham v. AAA Law Gp*. LLC, 4:19-cv-00105 (E.D.

(continued...)

litigation business.[4]  Like Perrong, Cunningham quickly settles after extracting a cash payment from his defendants.

Although Plaintiff Barrett does not have the long history of TCPA litigation of Perrong and Cunningham, Barrett has partnered with Cunningham and Plaintiffs' counsel to bring nearly identical TCPA claims.  *See Barrett v. Fidelity Sec. Life Ins. Co.*, No. 1:18-cv-11545 (D. Mass filed July 24, 2018).  Barrett is thus similarly situated to Cunningham and Perrong with respect to his interests in this litigation.

Plaintiffs are operating TCPA litigation businesses and, between them, maintain more than 25 phone numbers solely for the purpose of soliciting and receiving allegedly actionable calls.  Plaintiffs therefore lack a cognizable injury-in-fact from the alleged calls and are not within the class of persons the TCPA is designed to protect.  This Court should thus find that they lack standing to continue to bring such suits.

Moreover, Perrong and Cunningham have begun using the threat of class litigation as leverage to obtain increasingly large settlements, and this case is only the latest example.  Based on each Plaintiff's alleged receipt of one or two calls or text messages from DSI or Vivint over a six-month period, Plaintiffs seek to certify three nationwide classes.  But, Plaintiffs' class claims are not plausible and should be stricken because individualized issues render certification of each

---

(...continued)

Tex. filed Feb 08, 2019); *Cunningham v. Air Voice, Inc.*, 4:19-cv-00096 (E.D. Tex. filed Feb 06, 2019); *Cunningham v. Big Think Capital, Inc.*, 2:19-cv-00638 (E.D.N.Y. filed Feb 01, 2019); *Cunningham v. Lifestyles Dev. LLC*, 4:19-cv-00006 (E.D. Tex. filed Jan 03, 2019).

[4] Cunningham has identified in public court filings at least the following phone numbers he claims to own: 206-312-8648, 214-531-1322, 615-212-9191, 615-331-7262, 615-348-1977, 615-

(continued...)

such class inappropriate.  Vivint should not be required to endure burdensome discovery to defend improper class claims brought by professional, serial litigants who are outside the scope of the TCPA's protection.  Accordingly, Vivint requests that, if the Amended Complaint is not dismissed in its entirety, the Court dismiss the class claims or strike the class allegations from the Amended Complaint.

## II.    STATEMENT OF FACTS

1.     Barrett alleges he received a pre-recorded call on his mobile phone on July 16, 2019 from "National Solar Program."  (Amended Complaint, ECF No. 24 (hereinafter "Compl.") ¶¶ 35, 38).

2.     Barrett alleges the call was made with an ATDS, or automatic dialer.  (Compl. ¶¶ 36, 37).

3.     Barrett then "engaged with the telemarketer" who "set an appointment for Mr. Barrett."  (Compl. ¶¶ 39, 40).

4.     Barrett alleges he then received a call and email from Vivint regarding the call from National Solar Program.  (Compl. ¶¶ 41-44).[5]

5.     Perrong alleges that he received "automated telemarketing calls from DSI" on April 4 and June 5, 2019. (Compl. ¶ 50).

_____

(...continued)
727-8846, 828-291-7465, and the 215-947-XXXX number on which his claims in this litigation are based.

[5] Vivint, Inc. and Vivint Solar are separate and distinct entities operating very different businesses.  Vivint, Inc. is a privately held corporation that sells smart home devices, burglar alarms, fire alarms and other related devices and associated monitoring services.  Vivint Solar is publicly traded on the New York Stock Exchange and is a residential solar provider that designs, installs and maintains photovoltaic systems.

6.      Perrong alleges he answered the call on June 5, 2019 and immediately knew the call was a commercial call from an automated, predictive dialing system. (Compl. ¶¶ 50-53).

7.      Nevertheless, Perrong chose to continue with the call and, after being transferred to a Vivint representative, he "confirmed an appointment" with Vivint, and his credit card was charged for Vivint's service.  (Compl. ¶¶ 58, 59).

8.      Perrong alleges that, on June 5—i.e., the same day he paid to become a Vivint customer—he "communicated to compliance counsel for Vivint that he was illegally called and wanted to receive no more contacts." (Compl. ¶ 60).

9.      Perrong alleges that, on June 12 and June 13, 2019, Vivint sent text messages to Perrong "regarding Vivint services." (Compl. ¶¶ 62-63).

10.     These text messages were not solicitations, but consisted of an installation appointment reminder and a notification regarding the availability of a smartphone app to connect with the Vivint system which Perrong had signed up for.  (Text Message Log and Templates, attached as Exhibit A).[6]

11.     Perrong alleges he received a text message from a third party, Callfire, on September 25, 2019.  (Compl. ¶¶ 83, 85, 87).

12.     Cunningham alleges that he received a single "automated telemarketing call from DSI for Vivint" on February 25, 2019.  (Compl. ¶ 74).

13.     Cunningham alleges this call was made with an ATDS.  (Compl. ¶ 75).

---

[6] As these text messages are referenced in Perrong's complaint and central to his claim, the Court may consider copies of the text messages on a motion to dismiss, even under Rule 12(b)(6). *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997).

14.     Cunningham alleges Vivint "contacted him directly on February 26, 2019 to confirm the appointment." (Compl. ¶ 78).

15.     Cunningham alleges that he asked to be added to Vivint's internal do not call list in November 2018. (Compl. ¶¶ 88, 89).

16.     Cunningham alleges he received text messages from a third party, Callfire, on July 30, 2019, August 2, 2019 and September 25, 2019.  (Compl. ¶¶ 81, 83, 85, 87, 94).

17.     The only harms alleged by Plaintiffs are that they were "temporarily deprived of legitimate use of their phones because the phone line was tied up during the telemarketing calls and their privacy was improperly invaded" and the calls were "frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiffs."  (Compl. ¶ 95).

18.     Plaintiffs are serial litigants operating TCPA litigation businesses, filing between them over 200 TCPA complaints since 2015.  (*See* Supra, Notes 1, 3).

19.     In support of their businesses, Plaintiffs maintain dozens of phone numbers.  (*See* Supra Note 2, 4).

20.      The Amended Complaint contains no allegation of calls made by Defendants to any person other than Plaintiffs.  Nevertheless, Plaintiffs seek to represent three nationwide classes:

National Do Not Call Registry Class

All persons within the United States to whom: (a) Defendants, and/or a third party acting on their behalf, made at least two telephone solicitation calls during a 12-month period; (b) to a residential telephone number; (c) that had been listed on the National Do Not Call Registry for more than 31 days prior to the first call; (d) promoting the goods or services of the Defendants; (e) at any time in the period that begins four years before the date of filing this Complaint to trial.

<u>Automated Call Class</u>

All persons within the United States to whom: (a) Defendants, and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) to their cellular telephone number or number that is charged per call; (c) using an automatic telephone dialing system or an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

<u>Internal Procedures Class</u>

All natural persons within the United States to whom: (a) Defendant and/or a third party acting on their behalf, made two or more calls in a twelve-month period; (b) which constitute telemarking; (c) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

(Compl. ¶ 119).

## III.   LEGAL STANDARD

### A.   Motion to Dismiss

"A motion under rule 12(b)(1) can be made on the ground that the plaintiff lacks standing and therefore the court lacks subject matter jurisdiction." *Baca v. Colo. Dep't of State*, No. 18-1173, 2019 U.S. App. LEXIS 24805, at *14 (10th Cir. Aug. 20, 2019).  On a motion to dismiss under Rule 12(b)(1), "a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). "When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations." *Id.*  Instead, a Court is obligated to "resolve disputed jurisdictional facts," and "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing" to assist it in doing so.  *Id.*  "The party invoking federal jurisdiction has the burden to establish that it is proper, and there is a presumption against its existence." *Baca*, 2019 U.S. App. LEXIS 24805, at *14.

Under Rule 12(b)(6), a defendant may move to dismiss a plaintiff's claims for "failure to state a claim upon which relief can be granted."  The Supreme Court has established a two-step process for determining whether a plaintiff has pled sufficient facts to overcome a motion to dismiss.  First, the Court must ignore "mere conclusory statements" or legal conclusions, which are not entitled to the presumption of truth.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Thus, "a complaint must contain sufficient factual matter . . . to 'state a claim [for] relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 662 (quoting *Twombly*, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009) (alteration in original) (internal quotation marks omitted).

### B.    Motion to Strike

The Supreme Court has recognized that filing a motion to strike before the plaintiff has moved to certify the class – or even before discovery – is proper where "the issues are plain enough from the pleadings to determine whether the interests of absent parties are fairly encompassed within the named plaintiff's claim."  *Gen'l Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 160 (1982).

Accordingly, federal courts—including sister courts in this circuit—have recognized that it is appropriate to strike class allegations under Rules 12(f), 23(C)(1)(A), and 23(d)(1)(D) "as soon as it becomes obvious that the plaintiff will be unable to satisfy Rule 23." *Anderson Living Tr. v. WPX Energy Prod., LLC*, No. CIV 12-0040 JB/KBM, 2016 U.S. Dist. LEXIS 131119, at *20-21 (D.N.M. Aug. 27, 2016) ("[I]f the allegations are facially inadequate on the basis of incontrovertible facts, a court may require a plaintiff to strike class allegations before discovery or before the plaintiff files a motion to certify a class."); *Dollison v. Am. Nat'l Ins. Co.*, No. 13-CV-0100-CVE-FHM, 2013 U.S. Dist. LEXIS 67279, at *26 (N.D. Okla. May 9, 2013) ("[Rule 23(d)(1)(D)] gives a district court the authority to strike or dismiss class allegations before discovery if it is apparent from the plaintiff's complaint that a class cannot be certified.")

## IV.   ARGUMENT

Plaintiffs' operation of businesses bringing TCPA lawsuits deprives them of standing here, as they have no suffered no concrete injury and fall outside the zone of interests of the TCPA.  For this reason, the Amended Complaint should be dismissed.  Regardless, Plaintiffs' claim for violation of the TCPA's Internal Procedures provision is not actionable and must be dismissed pursuant to Rule 12(b)(6).

Additionally, this Court should dismiss or strike the class allegations from the Amended Complaint.  First, well-recognized individualized issues of consent, which are a complete defense to liability, predominate over any class-wide issues.  This defect cannot be remedied as excluding consenting individuals from the class would render it impermissibly fail-safe class and not ascertainable under Rule 23.  Second, Plaintiffs' Complaint is devoid of any facts to support their class-wide allegation, and therefore, does not plausibly state class-wide allegations.

### A.      Plaintiffs' Standing to Bring this TCPA Case

The United States Constitution sets forth that the jurisdiction of the federal courts will only extend to "Cases" and "Controversies." *Lance v. Coffman*, 549 U.S. 437, 439 (2007). "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III.'" *Collins v. Daniels*, 916 F.3d 1302, 1312 (10th Cir. 2019) (internal quotation marks omitted). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or particular issues." *Allen v. Wright*, 468 U.S. 737 (1984). To establish standing, the plaintiff must show: 1) an "injury-in-fact" which is concrete and particularized, as well as actual or imminent; 2) that the conduct complained of is "fairly traceable" to the defendant; and 3) that the injury is "likely redressed" by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Further, "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016). A plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1543 (2016). Rather, to "satisfy the injury-in-fact requirement of Article III," the injury cannot be a "bare procedural violation, divorced from any concrete harm." *Id*. "A 'concrete' injury must be 'de facto'; that is, it must actually exist, as opposed to being hypothetical or speculative." *Salcedo v. Hanna*, 2019 U.S. App. LEXIS 25967, at *6 (U.S. 11th Cir. Aug. 28, 2019). This requirement of a "concrete" rather than merely "statutory" injury applies in the TCPA context. *Id*. at *6-8; *Hampton v. Barclays Bank Del.*, No. 18-4071-DDC-ADM, 2019 U.S. Dist. LEXIS 152932, at *27 (D. Kan. Sep. 9, 2019).

In *Salcedo*, the Eleventh Circuit concluded that the brief annoyance wrought by a single text message sent to a cellphone was not a sufficient injury to support standing for a TCPA claim, absent non-conclusory allegations of other harm suffered by the plaintiff.  There, the plaintiff alleged that the text message "caused Plaintiff to waste his time answering or otherwise addressing the message. While doing so, both Plaintiff and his cellular phone were unavailable for otherwise legitimate pursuits."  2019 U.S. App. LEXIS 25967, at *7.  He further alleged that the message "resulted in an invasion of Plaintiff's privacy and right to enjoy the full utility of his cellular device." *Id*.  He did not allege the text message resulted in additional cost to him.  *Id*.

The court rejected these claims, concluding that a general allegation of wasted time and unavailability of his device were insufficient to show a concrete harm.  *Id*. at *7-8.  In particular, the court concluded that the plaintiff failed to quantify any lost time, failed to identify any lost opportunity resulting from the brief unavailability of the device, and observed that a mobile phone, unlike older technologies such as a fax machine, is not rendered unavailable as a result of incoming messages.  *Id*. at *8-10 ("A fax machine's inability to receive another message while processing a junk fax has no analogy with cell phones and text messaging.").  The court further concluded that calls to mobile phones cause less intrusion than calls to a home phone due to their portability and ability to be silenced.  *Id*. at *13.  The court thus concluded that the "brief, inconsequential annoyance" of a single text message was "categorically distinct" from the types of intangible but real harms that are sufficient to invoke Article III standing.

The same is true here.  Barrett alleges that he received a single phone call from "National Solar Program."  Compl. ¶ 35.  Barrett alleges that he immediately recognized the call was a commercial call from an automated, predictive dialing system.  Compl. ¶ 37.  Barrett, thus, could

have terminated the call, but chose instead to "engage[] with the telemarketer" and set an appointment  Compl. ¶¶ 39, 40.  Only after setting an appointment does Barrett allege he received any further contact from Vivint.  Compl. ¶¶ 41-42.  Notably, Barret alleges he was contacted by a representative for Vivint Solar, which as noted above, is a different company than Vivint, Inc.

Perrong alleges that he received two phone calls from DSI, two months apart, the first of which he ignored.  Compl. ¶¶ 50, 51.  With respect to the call he answered, Perrong alleges that he immediately knew the call was a commercial call from an automated, predictive dialing system.  Compl. ¶ 52.  Perrong, thus, could have terminated the call, but elected to stay on the line in order to "confirm[] an appointment" with Vivint and pay for service.  Compl. ¶¶ 58, 59.  Only after choosing to sign up for Vivint's service did he receive any further contact from Vivint, which all related to his upcoming service installation.  Compl. ¶¶ 61-62; Ex. A.

Last, Cunningham alleges that he received a single call from DSI on behalf of Vivint on February 25, 2019.  Compl. ¶ 74.  Cunningham alleges that he immediately knew the call was a commercial call from an automated, predictive dialing system.  Compl. ¶ 76.  Nevertheless, Cunningham chose to stay on the line to make an appointment.  Compl. ¶ 78.  Only after making an appointment with Vivint did he receive further communications from Vivint to confirm that appointment.  *Id*.[7]

---

[7] Both Perrong and Cunningham allege they received text messages from Callfire.  Neither Perrong nor Cunningham allege that Vivint has any agreement with Callfire or that Callfire was otherwise acting at Vivint's direction.  Accordingly, the Callfire text messages are irrelevant to Plaintiffs' claims against Vivint.

The harms alleged by Plaintiffs here are indistinguishable from the "chirp, buzz, or blink of a cell phone" the *Salcedo* court found was a "brief, inconsequential annoyance" that did not constitute a concrete harm.  2019 U.S. App. LEXIS 25967 at *19.  Indeed, absent Plaintiffs' decision to "engage" with the callers, make appointments, or sign up for service to elicit further calls in support of their TCPA-litigation business, Compl. ¶¶ 39, 40, 58, 69, 78, it is unlikely any call would have lasted more than a few seconds as Plaintiffs all allege facts showing they immediately realized the calls were automated.  Compl. ¶¶ 37, 53, 76.  *See Salcedo*, 2019 U.S. App. LEXIS 25967, at *20 (concluding that "Congress does not view tying up a phone line for five seconds as a serious intrusion").  Additionally, Perrong would not have received the follow-up text messages from Vivint except for the fact that he solicited them by signing up for Vivint's service—as evidenced by the fact that the text messages consisted of an installation-appointment reminder and notification of the availability of a smartphone app to connect to Perrong's new Vivint system.  (Ex. A).  Accordingly, just as the plaintiff in *Salcedo*, Plaintiffs lack a concrete injury sufficient to support Article III standing.  *See also Zemel v. CSC Holdings LLC*, 2017 U.S. Dist. LEXIS 63398, at *14-15 (D.N.J. Apr. 16, 2017) (concluding receipt of three text messages did not constitute nuisance that would cause injury and explaining that calls to cell phone "do[] not implicate the same privacy concern" as calls to a residence).

Moreover, Plaintiffs' alleged harms fall outside the zone of interests that the TCPA seeks to protect.  *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 796–806 (W.D. Pa. 2016) (no standing for repeat TCPA litigant); *Tel. Sci. Corp. v. Asset Recovery Sols.*, LLC, No. 15-CV-5182, 2016 U.S. Dist. LEXIS 104234, at *51 (N.D. Ill. Aug. 8, 2016) (operator of "honeypot" that existed to solicit and receive robocalls not in zone of interests of TCPA); *Cellco P'ship v.*

*Wilcrest Health Care Mgmt.*, No. 09-3534 (MLC), 2012 U.S. Dist. LEXIS 64407, at *23 (D.N.J.

May 8, 2012) (operators of cell networks lacked standing to bring TCPA claims because the

"only reason for th[e] volume of calls" was "due to the nature of [the plaintiff's] business"). The

zone of interests analysis "applies to all statutorily created causes of action." *Lexmark Int'l, Inc.*

*v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014); *see also Shelton v. Target*

*Advance LLC*, No. 18-2070, 2019 U.S. Dist. LEXIS 64713, at *14 (E.D. Pa. Apr. 16, 2019)

(plaintiff would lack injury-in-fact and not fall within zone of interests of TCPA if purpose of

business was to "drum up TCPA litigation by inducing business-to-business robocalls").

*Stoops* is particularly instructive. There, the plaintiff purchased several cell phones with

reassigned phone numbers for the sole purpose of claiming that each subsequent call violated the

TCPA. 197 F. Supp. 3d at 788. She filed at least eleven TCPA lawsuits in the Western District

of Pennsylvania, as well as other suits outside the jurisdiction. *Id.* Defendants argued that, by

virtue of her litigation history and experience of manufacturing TCPA suits, plaintiff lacked

constitutional standing because she had no injury-in-fact. *Id.* at 795–96.

The court agreed that plaintiff had no Article III standing. *Id.* at 806. Specifically, it

found her privacy rights were not violated when she received the calls and she suffered no

economic injury based on the calls. *Id.* at 796–806. The court determined that the calls were not

a nuisance, not invasion of privacy, and not unwanted because plaintiff sought the calls in order

to file lawsuits. *Id.* at 800. The court further determined the plaintiff could not "manufacture

standing" by choosing to spend her money with hopes of being called in violation of the TCPA.

*Id.* at 801–02 (citing *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1143 (2013) (holding that a

plaintiff "cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending")).

The *Stoops* court further held that plaintiff lacked prudential standing. 197 F. Supp. 3d at 804–05.  Specifically, Plaintiff's interests of maintaining "phones with the hope of receiving calls from creditors for the sole purpose of collecting statutory damages," fell outside the zone of interests the statute sought to protect.  *Id.* at 805.  The *Stoops* court stated "it is unfathomable that Congress considered a consumer who files TCPA actions as a business when it enacted the TCPA."  *Id.*; *see also Cellco*, 2012 U.S. Dist. LEXIS 64407, at *25 ("The TCPA, as noted above, anticipates damages on an individual basis because the contemplated plaintiff is an individual natural persons or business <u>with a limited number of phone lines</u>.") (emphasis added).

The facts in *Stoops* are strikingly similar to those before this Court.  Based on the allegations made in their multiple TCPA lawsuits, Plaintiffs own some two dozen phone numbers between them.  *See* supra n.2, 4.  And Plaintiffs have filed as many as 200 TCPA lawsuits with essentially identical allegations.  It appears Plaintiffs, like Stoops, are obtaining reassigned phone numbers, seeking calls, and then suing for TCPA violations.

But Plaintiffs go further than Stoops.  Perrong's own allegations in the dozens of suits he has filed evidence that Perrong engages in conduct designed to manufacture TCPA claims.  For example, in *Perrong v. American Renovations*, No. 2:18-cv-02069, Perrong describes how, after receiving a phone call from one of the defendants, Southern California Home Improvement Center, he scheduled an appointment to have a representative drive to his home and provide him with an estimate.  *American Renovations*, No. 2:18-cv-02069, ECF No. 1 at ¶¶ 24-26 (E.D. Pa. May 17, 2018).  When the representative, an employee of American Renovation Center, arrived

later that same day, Perrong took his business card and told him he was not actually interested in any services. *Id.* ¶ 26. Perrong admits that he knew he would receive additional calls as a result of the appointment he requested, because he understood it was the defendants' practice to place follow-up calls after completion of an at-home visit. *Id.* ¶ 30. Nevertheless, when Perrong received the expected follow-up calls from American Renovation Center shortly after the appointment, he relied on those calls as the basis to add American Renovation Center to his TCPA complaint, which he filed the following day. *Id.* ¶¶ 27-30.

Many of Perrong's complaints bear this hallmark of fraudulently requesting services or feigning interest in products to solicit additional phone calls that are then incorporated into his TCPA claims. In *Perrong v. Secure Auto. Solutions, Inc.*, No. 2:18-cv-02864, Perrong tricked a defendant business into calling Perrong by placing an order with his credit card, then freezing the account so the charge would be declined, thus ensuring the business would call him back. ECF No. 1, ¶¶ 21-28 (E.D. Pa. July 9, 2018). Perrong filed suit the same day. *See also Perrong v. MS Int'l Enters.*, No. 2:18-cv-4760, ECF No. 1, ¶¶ 22-23 (E.D. Pa. Nov. 2, 2018) (plaintiff called number and "confirmed 'interest'" before being transferred to defendant).

Perrong's conduct has become more brazen as his lawsuits have gone unchecked. Indeed, one recent defendant has filed a counterclaim against Perrong seeking to hold him accountable for his fraudulent conduct. *Perrong v. Golden Rule Ins. Co.*, No. 1:19-cv-1940, ECF No. 38 (S.D. Ind. July 16, 2019). There, Perrong filled out an online application and requested a quote for health insurance, providing his cellular phone number. *Id.* ¶ 8. Perrong expressly consented to receiving calls from the defendant using an automated telephone dialing system. *Id.* ¶¶ 9-10. When Perrong received a call, he falsely represented that the call was "out

of the blue," but nevertheless continued to feign interest in obtaining health insurance. *Id.* ¶ 14. Perrong then sued the defendant for these calls, alleging that he had not consented to receipt of these calls. *Id.* ¶ 28.

The alleged calls Plaintiffs received are hardly unwanted or intrusive—their litigation history makes plain that they were trying to receive the calls and, in many cases, actively solicited them. There is no other way to view Plaintiffs' excessive number of phone lines and corresponding litigation history as anything other than the setting of traps for businesses who attempt to market legally by telephone. The purpose of such conduct is to make Plaintiffs money through TCPA claims. It is constitutionally impermissible to artificially manufacture standing in such a manner. *Clapper*, 133 S. Ct. at 1143. Similarly, statutory or prudential standing is lacking, because Plaintiffs' motivation is their own economic self-interest, and therefore, they fall outside the zone of interests Congress sought to protect through passage of the TCPA.

"A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Spokeo*, 136 S. Ct. at 1548. Here, Plaintiffs have no concrete injury—the calls that they allege harmed them are, in fact, the point of their businesses. As Plaintiffs lack an injury-in-fact and allege "harm" that is outside the zone of Congressional intent, they have no Article III or statutory standing. As such, the Amended Complaint should be dismissed in its entirety.

### B.      Plaintiffs' Internal Procedures Claim is Not Actionable

If the Amended Complaint is not dismissed in its entirety as to all Plaintiffs, Count Two of the Amended Complaint must be dismissed for lack of a private right of action. Plaintiffs allege therein that "Defendant" failed to comply with the "required minimum procedures for maintaining a list of persons who do not want to receive calls made by or on behalf of such

person or entity"—an internal Do Not Call List—as required by 47 C.F.R. § 64.1200(d).  Compl.

¶ 136.  Plaintiffs' claim must fail because no private right of action exists for violation of the

"technical and procedural standards" set forth in 47 C.F.R. § 64.1200(d).  *See Braver v.*

*NorthStar Alarm Servs., LLC*, No. CIV-17-0383-F, 2019 U.S. Dist. LEXIS 118080, at *34 (W.D.

Okla. July 16, 2019).

The TCPA provides a private right of action under 47 U.S.C. § 227(c) but not 47 U.S.C.

§ 227(d).  *Id*. at *34.  While Plaintiffs contend that the requirements found in 47 C.F.R.

§ 64.1200(d) are "regulations implementing subsection 227(c)," Compl. ¶ 136, Plaintiffs are

incorrect.  Rather, most courts to address the issue have concluded § 64.1200(d) contains

"technical and procedural standards" promulgated pursuant to 47 U.S.C. § 227(d), not

protections of subscriber privacy rights under 47 U.S.C. § 227(c).  *Braver*, 2019 U.S. Dist

LEXIS 118080, at *33-35; *Worsham v. Travel Options, Inc.*, No. JKB-14-2749, 2016 U.S. Dist.

LEXIS 118774, at *17 (D. Md. Sep. 1, 2016); *Burdge v. Ass'n Health Care Mgmt.*, No. 1:10-CV-

00100, 2011 U.S. Dist. LEXIS 9879, at *8 (S.D. Ohio Feb. 2, 2011).  The only court to reach a

contrary conclusion did so "without analysis."  *Braver*, 2019 U.S. Dist LEXIS 118080, at *35

(distinguishing *Charvat v. NMP, LLC*, 656 F.3d 440, 448 (6th Cir. 2011)).

Because the requirements of 47 C.F.R. § 64.1200(d) were promulgated pursuant to 47

U.S.C. § 227(d), and because 47 U.S.C. § 227(d) does not provide a private right of action,

Plaintiffs' allegations that "Defendant" violated 47 C.F.R. § 64.1200(d) by failing to maintain or

implement an internal Do Not Call list are not actionable and must be dismissed.

### C.   Individualized Issues Dominate and Preclude Class Certification

The Complaint makes clear that class treatment is improper due to numerous individualized issues, including whether any particular consumer gave or subsequently revoked consent.  "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods. v. Windsor*, 521 U.S. 591, 623, 117 S. Ct. 2231, 2249 (1997).  "[P]redominance may be destroyed if individualized issues will overwhelm those questions common to the class."  *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1220 (10th Cir. 2013).  "If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate."  *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2011).

"Prior express consent is a complete defense" to a claim under the TCPA.  *Reardon v. Uber Techs., Inc.*, 115 F. Supp. 3d 1090, 1107 (N.D. Cal. 2015).  Thus, "[r]esolution of each putative class member's TCPA claim would necessarily involve an individual assessment of whether each class member consented to receive telephone calls on their cellular telephone."  *Balthazor v. Cent. Credit Servs., Inc.*, No. 10-cv-62435, 2012 WL 6725872, at *4 (S.D. Fla. Dec. 27, 2012); *See also Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 327 (5th Cir. 2008) (reversing class certification because "the predominant issue of fact is undoubtedly one of individual consent"); *Versteeg v. Bennett, Deloney & Noyes*, P.C., 271 F.R.D. 668, 674 (D. Wyo. 2011) (declining to certify a TCPA class because "the TCPA claims will require extensive individual fact inquiries into whether each individual gave 'express consent'"); *Hicks v. Client Servs., Inc.*, No. 07-CIV-61822, 2008 WL 5479111, at *8 (S.D. Fla. Dec. 11, 2008) (holding

certification on a TCPA claim was improper because the issue of consent would have to be determined on an individual basis at trial); *Pepka v. Kohl's Dep't Stores, Inc.*, No. 16-cv-4293, 2016 U.S. Dist. LEXIS 186402, at *9-10 (C.D. Cal. Dec. 21, 2016) (striking class allegations at the pleading stage because "no matter what that discovery might show, the fact remains plaintiffs' allegations require an individualized inquiry into questions" of consent). Moreover, whether any recipient of a call effectively revoked their consent is similarly an individualized, fact-bound inquiry. *ACA Int'l v. FCC*, 885 F.3d 687, 709 (D.C. Cir. 2018) (approving FCC rule adopting "reasonable means" standard for evaluating revocation of consent, which considers "the totality of the facts and circumstances").

Thus, Plaintiffs' putative class definitions require that issues of consent be examined for every single member of the classes. Plaintiffs cannot avoid this obvious failure of their class claims by simply alleging that the class members were called without their consent, Compl. ¶¶ 2, 3, because Vivint is entitled to rely on and present evidence of consent with respect to every putative class member.[8] Because this is an inherently individualized inquiry, class treatment is inappropriate and the class allegations in the Amended Complaint should be stricken.

---

[8] To the extent the allegation that the putative class members did not consent could be understood to limit the classes to only nonconsenting recipients, such an argument would render Plaintiffs' proposed classes impermissibly fail-safe, as they otherwise track the elements of liability that Plaintiffs would need to prove on the merits. *See Taylor v. Universal Auto Group I, Inc.*, No. 3:13-cv-05245KLS, 2014 WL 6654270, at *22 (W.D. Wash. Nov. 24, 2014) (denying motion for class certification in TCPA class action because "inclusion of the 'without prior consent' language in the national class definition makes it a 'failsafe' class, as clearly the issue of consent is central to determining defendant's liability"); *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-cv-846, 2014 WL 1814076, at *4-9 (S.D. Ohio May 7, 2014) (reviewing cases addressing whether proposed TCPA classes defined to include individuals who did not provide prior express consent qualified as fail-safe classes and finding that such classes are impermissible).

**D.      Plaintiffs Have Failed to Sufficiently Plead Their Class Claims**

Last, Plaintiffs have failed to allege a single fact supporting their class allegations. Plaintiffs identify four calls between the three of them that form the entire basis of their complaint.  Allegations regarding calls allegedly received by unnamed class members are markedly absent.  The Amended Complaint contains two conclusory allegations that Vivint "commissioned" automated or pre-recorded telemarking calls to "other putative class members without their prior express written consent."  Compl. ¶ 2, 3.  And the Amended Complaint further alleges that Plaintiffs can represent a nationwide class because "telemarketing campaigns *generally* place calls to hundreds of thousands or even millions of potential customers."  Compl. ¶ 6.  These bare, conclusory, and speculative allegations do not satisfy the requirements of Rule 8, particularly in the context of a putative nationwide class action.  "[A] complaint must contain sufficient factual matter . . . to 'state a claim [for] relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 662 (quoting *Twombly*, 550 U.S. at 570).  Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79.

As the Tenth Circuit has explained, in evaluating the sufficiency of a claim, courts must disregard all legal conclusions and threadbare recitals of the elements of a claim and consider only the well-pleaded facts.  *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018).  "If, in the end, a plaintiff's 'well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,' the complaint fails to state a claim." *Id.*  The Supreme Court has "caution[ed] that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." *Twombly*, 550 U.S. at 555 n.3; *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir.

2009) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.").

This is in accord with other Circuits, which have similarly refused to consider assertions based solely "upon information and belief." *See Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (holding that plaintiff had "not alleged enough facts" to move his claim "from conceivable to plausible" because "we do not have to take as true Mann's allegations 'upon information and belief'") (citing *Twombly*, 550 U.S. 544, 551, 557 (2007)); *Smith v. City of Sumiton*, 578 F. App'x 933, 935 n.4 (11th Cir. 2014) (refusing to consider allegation that other individuals were subjected to the same treatment as the plaintiff because "[w]e do not discuss that allegation because, for purposes of a Rule 12(b)(6) motion to dismiss, we do not have to take as true allegations based merely 'upon information and belief'").

At least one district court has dismissed the class claims in a TCPA case for this very reason. *See, e.g.*, *Daisy, Inc. v. Pollo Operations, Inc.*, No. 14-564-FtM-38CM, 2015 U.S. Dist. LEXIS 39265, at *13 (M.D. Fl. Mar. 27, 2015) (dismissing class claims where plaintiff merely recited "the elements of a class action and stat[ed] it believes forty (40) other businesses received the same facsimiles it received."). The *Daisy* court found such pleading insufficient because "Plaintiff does not provide the Court with any factual basis other than a speculation based upon the Plaintiff's information and belief that some forty other businesses also received the alleged facsimiles in violation of the TCPA." *Id.* at *14.  Thus, the court held that "[t]he Plaintiff has not pled a sufficient factual basis to support a plausible Rule 23 class action claim at this point in the proceedings." *Id.*

Like the plaintiff in *Daisy*, all of Plaintiffs' class allegations rely solely on speculation. Plaintiffs' complaint contains no factual allegations regarding calls received by other class members.  Plaintiffs' only allegation regarding the number of people they claim Vivint or DSI called is a conclusory claim that "[t]he potential class members number at least in the thousands," although Plaintiffs offer no factual support or explanation of how they arrived at this figure.  Compl. ¶ 122.  Indeed, Plaintiffs have offered no allegation or evidence that anyone other than the Plaintiffs themselves belong to the class.  Plaintiffs cannot use an entirely speculative class action claim as a bludgeon in an effort to obtain a more lucrative settlement from Vivint. Plaintiffs' class allegations must be stricken.

## V.  CONCLUSION

For the foregoing reasons, Vivint respectfully requests that the Amended Complaint be dismissed or, in the alternative, that the class allegations be stricken.

DATED this 5th day of November, 2019.


/s/ Nathan R. Marigoni
Melanie J. Vartabedian, Esq.
Nathan R. Marigoni, Esq.
BALLARD SPAHR LLP
Attorneys for Defendant, Vivint, Inc.