IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| JOSEPH BARRETT, CRAIG CUNNINGHAM, and ANDREW PERRONG,<br><br>Plaintiffs,<br><br>v.<br><br>VIVINT, INC.; JOHN DOE CORPORATION dba NATIONAL SOLAR PROGRAM; and DSI DISTRIBUTING, INC., dba DSI SYSTEMS,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING [29] AND [30] DEFENDANTS' MOTIONS TO DISMISS AMENDED COMPLAINT OR TO STRIKE CLASS ALLEGATIONS**<br><br>Case No. 2:19-cv-00568-DBB-CMR<br><br>District Judge David Barlow |

This matter is before the court on motions to dismiss Plaintiffs' Amended Complaint filed by defendants Vivint, Inc. and DSI Distributing, Inc. (together with Vivint, Defendants).[1] Defendants contend that Plaintiffs lack standing to maintain this action.[2] Specifically, Defendants argue Plaintiffs have suffered no cognizable injury-in-fact from allegedly receiving unsolicited calls from Defendants on the "more than 25 phone numbers" maintained "solely for the purpose of . . . receiving allegedly actionable calls" under the Telephone Consumer Protection Act (TCPA).[3] Defendants alternatively request dismissal for Plaintiffs' failure to state a claim. Defendants also request an order striking Plaintiffs' class allegations as implausible if

---

[1] Defendant Vivint, Inc. filed a Motion to Dismiss Amended Complaint or to Strike Plaintiffs' Class Allegations (Motion to Dismiss) (ECF No. 29). Defendant DSI Distributing, Inc. also filed a Motion to Dismiss Amended Complaint or to Strike Plaintiffs' Class Allegations (ECF No. 30). In its motion to dismiss, DSI requests dismissal of the Amended Complaint (ECF No. 24), or an order striking the class allegations, incorporating the argument and reasons offered in the Vivint Motion to Dismiss. Because the arguments are identical, the court throughout this decision refers to the argument only in Vivint's Motion to Dismiss.

[2] Motion to Dismiss at 5.

[3] *Id.*

the Amended Complaint is not dismissed.[4] Having considered the briefing and relevant law, the court denies Defendants' motions.[5]

## BACKGROUND

Joseph Barrett received a call to his cellular telephone on July 16, 2019.[6] Despite the presence of Barrett's number on the National Do Not Call Registry, this call was made with an Automatic Telephone Dialing System (ATDS) and comprised a pre-recorded message.[7] Barrett eventually connected with a live individual on the call who represented the "National Solar Program."[8] Barrett engaged with the representative and ultimately set an appointment.[9] Later, a representative of Vivint called Barrett and confirmed the appointment.[10]

Andrew Perrong received ATDS calls on April 4 and June 5, 2019; he ignored the first call and answered the second.[11] His telephone number was on the National Do Not Call Registry and the Pennsylvania Do Not Call Registry.[12] The Caller ID for the calls identified "a 'spoofed' number" for an electric utility, PECO Energy.[13] A representative of DSI, who said he was calling from Vivint, eventually came on the line and promoted Vivint's products to Perrong.[14] After he was transferred to another Vivint representative, Perrong set an appointment and provided Vivint

---

[4] *Id.*

[5] Pursuant to DUCivR 7-1(f) the court elects to resolve the motions on the written memoranda.

[6] Amended Complaint (ECF No. 24) ¶¶ 32–35.

[7] *Id.* at ¶¶ 35, 36; *see* 47 C.F.R. § 64.1200(c)(2) (prohibiting telephone solicitation to a "telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government").

[8] Amended Complaint at ¶ 38.

[9] *Id.* at ¶¶ 39, 40.

[10] *Id.* at ¶ 41.

[11] *Id.* at ¶¶ 50–52.

[12] *Id.* at ¶ 47.

[13] *Id.* at ¶¶ 53–54.

[14] *Id.* at ¶¶ 55–56.

his credit card number.[15] On the same day as the call, Perrong communicated with compliance counsel for Vivint, explaining that he was called illegally and "wanted to receive no more contacts."[16] Perrong received a confirmation email on June 6 and "a follow up" on June 10, 2019.[17] Despite these communications, Vivint sent Perrong automated text messages regarding Vivint services on June 12 and 13, 2019.[18]

Craig Cunningham received an ATDS call on February 25, 2019 from DSI for Vivint.[19] A live representative from DSI eventually came on the line and promoted Vivint products.[20] Vivint contacted Cunningham the following day to confirm an appointment, but Cunningham stated he was not interested.[21] On July 30, 2019, Cunningham received a text message stating the following:

> (Vivint Will Buy It) Want Vivint but under contract with another company? Good. We'll buy it.
>
> Go with a different company and regret it? Good. We'll buy it.
>
> Click here to get started-[URL][22]

Cunningham received another text message to the same cellular telephone number on August 2, 2019, stating:

> SWITCH TO VIVINT and we'll pay your early termination fee with your alarm company. Up to $1,000. Gladly.
>
> Here's $200 to switch your doorbell camera out for the Vivint Doorbell Camera.

---

[15] *Id.* at ¶¶ 57–59.

[16] *Id.* at ¶ 60.

[17] *Id.* at ¶ 61.

[18] *Id.* at ¶¶ 62–65.

[19] *Id.* at ¶¶ 74–76.

[20] *Id.* at ¶ 77.

[21] *Id.* at ¶¶ 78–79.

[22] *Id.* at ¶ 81.

> No alarm or doorbell cam? Sign up with Vivint this weekend and the first camera is $0. Any camera.
>
> Get started by clicking below-[URL][23]

Cunningham received these contacts despite being informed in November 2018 that his telephone number would be added to Vivint's internal Do-Not-Call list.[24]

After receiving the August 2 text, Cunningham responded "Stop" and received a text stating, "You have discontinued from EZ Texting alerts. You will no longer receive messages from this service. Questions www.eztexting.com."[25] Despite seemingly opting out of future contacts, Cunningham received another text on September 25, 2019, stating:

> Still in contract with your alarm company? We'll pay it off. (Up to $1,000 of it)
>
> OR
>
> Choose any one camera for $0.
>
> Click to Sign up with the largest Smart Home provider today-
> https://myvivintdeals.com
>
> To stop receiving messages reply "STOP" [URL]

Plaintiffs allege that they were harmed by the calls and texts they received. The calls and texts "were frustrating, obnoxious, annoying, were a nuisance and disturbed [their] solitude."[26] Also, Plaintiffs were "temporarily deprived of legitimate use of their phones," "their privacy was improperly invaded," and "in many cases [they] were charged per minute or per character" rates for the messages.[27]

---

[23] *Id.* at ¶ 83.

[24] *Id.* at ¶¶ 88–89.

[25] *Id.* at ¶¶ 92–93.

[26] *Id.* at ¶¶ 95, 96.

[27] *Id.* at ¶¶ 95, 96.

**DISCUSSION**

Defendants request dismissal of the Amended Complaint, citing Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[28] Defendants also request an order striking Plaintiffs' class allegations.[29] The court addresses each in turn.

### I. Plaintiffs Have Standing to Bring this Lawsuit.

Defendants argue Plaintiffs lack standing and, as a result, this court lacks subject matter jurisdiction to hear this matter.[30] Specifically, Defendants contend that the calls and text messages Plaintiffs received do not amount to concrete harms and that Plaintiffs operate businesses whose purpose is to litigate TCPA litigation, putting them beyond the zone of interests of the TCPA.[31]

### A. Plaintiffs Have Article III Standing.

"Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy" under Article III of the United States Constitution.[32] The Tenth Circuit "has repeatedly characterized standing as an element of subject matter jurisdiction"[33] and has held "that a dismissal for lack of standing can be at least colorably characterized as a dismissal for lack of subject matter jurisdiction."[34] "When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual

---

[28] Motion to Dismiss at 9–10.

[29] *Id.* at 9–11, 21–25. Fed. R. Civ. P. 23(d)(1)(D) (authorizing orders "requir[ing] that the pleadings be amended to eliminate [class] allegations about representation of absent persons").

[30] Motion to Dismiss at 9–10 (quoting *Baca v. Colorado Dep't of State*, 935 F.3d 887, 905 (10th Cir. 2019), *cert. granted,* No. 19-518, 2020 WL 254162 (U.S. Jan. 17, 2020)).

[31] Motion to Dismiss at 11, 15.

[32] *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *see* U.S. Const. art. III.

[33] *Hill v. Vanderbilt Capital Advisors, LLC*, 702 F.3d 1220, 1224 (10th Cir. 2012).

[34] *Id.* at 1225.

allegations."[35] In its discretion, the court may consider affidavits and other evidence outside the pleadings in resolving disputed jurisdictional facts.[36] Plaintiffs bear the burden of establishing Article III standing and must show that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."[37] The only element at issue here is the first, whether Plaintiffs suffered an injury in fact.[38]

An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not 'conjectural' or 'hypothetical.'"[39] "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element."[40] In this case, Defendants contend that Plaintiffs lack the required concrete injury.[41]

A "concrete" injury "must actually exist."[42] Both tangible and intangible injuries can be "concrete" for purposes of satisfying Article III standing requirements.[43]

Plaintiffs allege that they were harmed when they received unwanted, pre-recorded calls from Defendants. Specifically, Plaintiffs assert intangible injuries in fact from the temporary

---

[35] *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).

[36] *Id.*

[37] *Spokeo*, 136 S. Ct. at 1547 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

[38] Motion to Dismiss at 5 ("Plaintiffs . . . lack a cognizable injury-in-fact from the alleged calls and are not within the class of persons the TCPA is designed to protect.").

[39] *Lujan*, 504 U.S. at 560 (citations and internal quotation marks omitted).

[40] *Spokeo*, 136 S. Ct. at 1547.

[41] Motion to Dismiss at 12–15.

[42] *Spokeo*, 136 S. Ct. at 1548.

[43] *Id.* at 1549.

deprivation of the use of their phones, invasion of their privacy, and disturbance of their solitude as a result of the calls.[44] Relevant to the circumstances here, the TCPA makes it

> unlawful for any person . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States[.][45]

The Supreme Court has acknowledged Congress's findings that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy."[46] Further, Congress authorized the Federal Communications Commission to exempt certain activities subject to conditions that do not "adversely affect the privacy rights that this section [of the TCPA] is intended to protect."[47] The Supreme Court's decisions have consistently recognized "the right of an individual 'to be let alone' in the privacy of the home, 'sometimes the last citadel of the tired, the weary, and the sick.'"[48] Under the TCPA, violative automated calls cause injury, an intrusion upon a party's privacy. The statute itself provides that plaintiffs may recover "actual monetary loss" or $500 for "each such violation, whichever is greater."[49]

Plaintiffs' allegations that they received unwanted automated calls from Defendants sufficiently show concrete injuries. The intangible injuries they assert—nuisance and invasion of privacy—constitute "the very harm that Congress sought to prevent, arising from prototypical

---

[44] Amended Complaint at ¶¶ 95, 96.

[45] 47 U.S.C. § 227(b)(1).

[46] *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

[47] 47 U.S.C. § 227(b)(2)(B)(ii)(I).

[48] *Carey v. Brown*, 447 U.S. 455, 471 (1980) (quoting *Gregory v. City of Chicago*, 394 U.S. 111, 125 (1969) (Black, J., concurring)).

[49] 47 U.S.C. § 227(b)(3)(b).

7

conduct proscribed by the TCPA."[50] Accordingly, the injuries as pled "actually exist."[51] Also, because the calls were made to Plaintiffs' phone numbers without their consent, the injuries to Plaintiffs are sufficiently personal to satisfy the requirement of particularized injuries.[52] Accordingly, Plaintiffs have met the minimum constitutional requirements for bringing suit.[53]

### B. Plaintiffs Have Statutory Standing

In addition to Article III standing, the court must determine whether Plaintiffs here have statutory standing. That is, the court must determine whether the TCPA authorizes a private right of action for the claims asserted by these Plaintiffs.[54]

There are three named plaintiffs in this case. Barrett alleges that his telephone number was registered with the National Do Not Call Registry before he received an ATDS call from National Solar Program on behalf of Vivint.[55] Perrong also alleges that his telephone number was registered with the National Do Not Call Registry before he received two ATDS calls from Vivint.[56] Text messages followed later.[57] Plaintiff Cunningham did not register his number with

---

[50] *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351 (3d Cir. 2017) (citation and internal quotation marks omitted); *see also Golan v. FreeEats.com, Inc.*, 930 F. 3d 950, 958–59 (8th Cir. 2019) (finding calls were a cognizable injury under TCPA bearing "close relationship to the types of harm traditionally remedied by tort law"); *Krakauer v. Dishnetwork, L.L.C.*, 925 F.3d 643 (4th Cir. 2019) (finding violation of TCPA "imposes a concrete burden on [plaintiff's] privacy"); *Owners Ins. Co. v. European Auto Works, Inc.*, 695 F.3d 814, 819–20 (8th Cir. 2012) (holding "the ordinary meaning of the term 'right of privacy' easily includes violations of the type of privacy interest protected by the TCPA").

[51] *Spokeo*, 136 S. Ct. at 1548.

[52] Amended Complaint at ¶¶ 2 (calls to Barrett's number), 3 (calls and text message to Perrong's number), 4 (call and text messages to Cunningham's number).

[53] Defendants urge this court to follow *Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019), but the case is inapposite. *Salcedo* dealt with a "single unsolicited text message," and the opinion focused extensively on that unusual fact. In the instant case, Plaintiffs have alleged receiving multiple calls, calls and a text, or a call and texts. Amended Complaint at ¶¶ 2-4.

[54] *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014) ("The zone-of-interests test is therefore an appropriate tool for determining who may invoke the [statutory] cause of action[.]").

[55] Amended Complaint at ¶¶ 32–44.

[56] *Id.* at ¶¶ 45–56.

[57] *Id.* at ¶¶ 62–67.

the National Do Not Call Registry, but was informed by Vivint in 2018 that his number would be put on an internal do-not-call-list. Despite that, Cunningham later received an ATDS call from DSI on behalf of Vivint and then two text messages from Vivint.[58] Among other things, Congress prohibited any person from making any call "using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any . . . cellular telephone service . . . ."[59] And the TCPA authorizes "[a] person or entity" to bring an action based on alleged violations of the Act.[60] "The text of this provision does not limit the universe of plaintiffs who may file suit in federal court."[61] Each plaintiff has alleged at least one violation of the TCPA.

In asserting a lack of statutory standing, Defendants do not argue that Plaintiffs' allegations are insufficient to state a claim under the TCPA. Instead, they contend that Plaintiffs' alleged economic motivations sets them outside the TCPA's zone of interest. Specifically, Defendants argue that Plaintiffs lack standing because they are "professional plaintiffs" with numerous phone lines—allegedly more than twenty-five between them—and a history of litigating TCPA cases for economic gain.[62] This argument, however, is not tethered to the language of the statute. Neither is it tied to Plaintiffs' causes of action. The Supreme Court has made clear that courts "do not ask whether in our judgment Congress *should* have authorized [plaintiff's] suit, but whether Congress in fact did so."[63] Because Congress authorized plaintiffs

---

[58] *Id.* at ¶¶ 4, 88–92.

[59] 47 U.S.C. § 227(b)(1)(A)(iii). The statute excepts calls made for emergency purposes and those made with the prior express consent of the called party. *Id.*

[60] *Id.* § 227(b)(3).

[61] *Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 323 (3d Cir. 2015).

[62] Motion to Dismiss at 2, 19.

[63] *Lexmark*, 572 U.S. at 128.

to file suit for alleged violations of the TCPA, including the circumstances alleged here, they have statutory standing.[64]

The Supreme Court instructs that "we presume that a statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.'"[65] As noted earlier, Congress has identified those interests as privacy rights.[66] In this case, Plaintiffs have pled that they received calls and texts prohibited by the TCPA. They further assert that "Plaintiffs here didn't want these calls," "do not want these unwelcomed calls," "were not seeking out these calls," and "tried everything in their power to stop them."[67] Plaintiffs further contend that "there is simply nothing here to support the characterization that they are 'operating TCPA litigation businesses'" and that "the numbers are used for residential purposes only . . . ."[68] This is sufficient at the motion to dismiss stage to bring Plaintiffs within the zone of the privacy rights the TCPA protects.[69]

---

[64] The Supreme Court has treated statutory standing "as effectively jurisdictional." *Lexmark*, 572 U.S. at 128 n.4 (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97, and n.2 (1998)). It is better understood, however, as a Congressional limitation on who may sue under the statute since "statutory standing" does not implicate subject matter jurisdiction. *See id.*

[65] *Id.* at 129.

[66] TELEPHONE CONSUMER PROTECTION ACT OF 1991, PL 102–243, December 20, 1991, 105 Stat. 2394 § 2, ¶ 5 (finding "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy and, when an emergency or medical assistance telephone line is seized, a risk to public safety"); *see Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (observing "'[a]utomated or prerecorded telephone calls' made to private residences, Congress found, were rightly regarded by recipients as 'an invasion of privacy'" (quoting TCPA 105 Stat 2394. § 2, ¶¶ 10, 12)).

[67] Plaintiffs' Opposition to Defendants Vivint, Inc. and DSI Distributing, Inc.'s Motions to Dismiss Amended Complaint or to Strike Plaintiffs' Class Allegations (Opposition to Motion to Dismiss) (ECF No. 44) at 2, 16–17; *see, e.g.*, Amended Complaint at ¶¶ 2, 3, 4, 6, 34, 47, 60, 79, 88, 89, 92–94.

[68] Opposition to Motion to Dismiss at 18–19.

[69] Defendants' reliance on *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782 (W.D. Pa. 2016) is unavailing. *Stoops* was decided at the summary judgment stage based on the uncontroverted facts that the plaintiff maintained approximately forty cell phones for one purpose, "to bring . . . TCPA lawsuit[s]." *Id.* at 800.

## II. Plaintiffs Have a Private Right of Action to Enforce the Internal Do-Not-Call-List Requirement Under the TCPA.

Defendants next contend that Plaintiffs lack a private right of action to enforce the requirement that Defendants maintain an internal Do Not Call List.[70] Plaintiffs allege violations of the regulations implementing the TCPA. Specifically, they contend Defendants made calls for telemarketing purposes to residential or wireless telephone subscribers without implementing the required minimum procedures for maintaining internal do-not-call lists.[71] Defendants argue Plaintiffs do not have a private right of action under the statute to bring this claim.[72]

Subsection 227(c) of the TCPA authorizes a private right of action for "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection."[73] The subsection further provides, "It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection."[74]

Subsection 227(d) mandates the FCC to prescribe "[t]echnical and procedural standards," including requirements that an individual or business using an ATDS clearly identify themselves, clearly state the telephone number or address of the caller, and release the called party's line

---

[70] Motion to Dismiss at 19.

[71] Amended Complaint at ¶ 136.

[72] Motion to Dismiss at 19–20.

[73] 47 U.S.C. § 227(c)(5).

[74] *Id.*

within five seconds of notification that they have hung up.[75] This subsection does not create an associated private right of action.[76]

In the implementing regulations at issue, the Federal Communications Commission (FCC) provided, "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."[77] The question presented in this case is whether this regulatory requirement flows from TCPA's subsection 227(c), allowing private enforcement actions, or from subsection 227(d), which does not authorize a private right of action.

Several courts addressing this question have concluded that § 64.1200(d) was promulgated under § 227(c), thus authorizing a private right of action.[78] The Sixth Circuit has also noted that the internal "do-not-call-list subsection, 47 U.S.C. § 227(c)" was "implemented in 47 C.F.R. § 64.1200(d)."[79] However, other courts have found the §64.1200(d) regulations flow from § 227(d) and thus cannot be privately enforced.[80] The Tenth Circuit has not spoken on this

---

[75] 47 U.S.C. § 227(d)(3).

[76] *Id.* § 227(d).

[77] 47 C.F.R. § 64.1200(d).

[78] *See, e.g.*, *Rosenberg v. LoanDepot.com LLC*, ---F.Supp.3d---, 2020 WL 409634, at *11 (D. Mass. Jan. 24, 2020) ("The available record indicates that § 64.1200(d) was promulgated under § 227(c) and contains a private right of action."); *Valdes v. Century 21 Real Estate, LLC*, 2019 WL 5388162, at *3 (D.N.J. Oct. 22, 2019) (noting § 227(c) "establish[es] a private right of action for violations of 47 C.F.R. §§ 64.1200(c) and (d)"); *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1200 (M.D. Tenn. 2017) (observing "the internal do-not-call procedures of 47 C.F.R. § 64.1200(d) fit cleanly under the rubric of 47 U.S.C. § 227(c)'s general mandate to adopt adequate do-not-call regulations"); *Cunningham v. Nationwide Sec. Sols., Inc.*, 2017 WL 10486988, at *4 (N.D. Tex. Nov. 2, 2017) ("47 C.F.R. § 64.1200(d) is a regulation prescribed under 47 U.S.C. § 227(c)(1)." (citing *Charvat v. NMP, LLC*, 656 F.3d 440, 443 (6th Cir. 2011)); *Wagner v. CLC Resorts & Developments, Inc.*, 32 F. Supp. 3d 1193, 1197 (M.D. Fla. 2014) ("To state a claim under section 227(c)(5) of the TCPA, a plaintiff must allege (1) receipt of more than one telephone call within any 12-month period (2) by or on behalf of the same entity (3) in violation of the regulations promulgated by the FCC.").

[79] *Charvat v. NMP, LLC*, 656 F.3d 440, 448 (6th Cir. 2011).

[80] *See, e.g.*, *Wilson v. PL Phase One Operations L.P.*, 2019 WL 4735483, at *6 (D. Md. Sept. 27, 2019) ("47 C.F.R § 64.1200(d) appears to fall within [47 U.S.C. § 227(d)'s] scope, which does not provide a private right of action.");

issue. For the reasons below, this court is persuaded that the internal do-not-call requirement of 47 C.F.R. § 64.1200(d) derives from the TCPA's directive that the FCC adopt regulations to "protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object" under 47 U.S.C. § 227(c)(1).[81]

First, the plain language of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d) are consistent. 47 C.F.R. § 64.1200(d) proscribes telemarketing calls where the caller has not established procedures regarding an internal do-not-call list.[82] This aligns with 47 U.S.C. § 227(c)(5)'s prohibition of multiple calls from the same entity in any twelve-month period, where that entity has not "established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection."[83] Moreover, Congress specifically directed the FCC in § 227(c)(1)(A) to "compare and evaluate alternative methods and procedures," including "industry-based or company-specific 'do not call' systems," for their efficiency and effectiveness in protecting privacy rights.[84] And the FCC incorporated the company-specific mechanism in §64.1200(d).

---

*Braver v. NorthStar Alarm Servs., LLC*, 2019 WL 3208651, at *14 (W.D. Okla. July 16, 2019) (holding "§ 64.1200(d) was actually promulgated under § 227(d), a subsection of the TCPA which does not provide a private cause of action"); *Worsham v. Travel Options, Inc.*, 2016 WL 4592373, at *4 (D. Md. Sept. 2, 2016) (observing "the requirements of § 64.1200(d) set forth the procedural standards for telemarketers to maintain their own, company-specific, do-not-call lists and, consequently, appear to fall under the aegis of subsection d of the TCPA"), *aff'd,* 678 F. App'x 165 (4th Cir. 2017); *Burdge v. Ass'n Health Care Mgmt., Inc.*, 2011 WL 379159, at *4 (S.D. Ohio Feb. 2, 2011) ("The Court finds that the regulations regarding identification and the provision of a telephone number or address found in 64.1200(d)(4) are technical and procedural in nature and were promulgated pursuant to section 227(d) of the TCPA.").

[81] *See Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1200 (M.D. Tenn. 2017) (finding that the "the internal do-not-call procedures of 47 C.F.R. § 64.1200(d) fit cleanly under the rubric of 47 U.S.C. § 227(c)'s general mandate to adopt adequate do-not-call regulations").

[82] 47 C.F.R. § 64.1200(d).

[83] 47 U.S.C. § 227(c)(5).

[84] *Id.* § 227(c)(1)(A).

Second, the internal do-not-call registry requirement fits the purpose of § 227(c). In addition to the National Do Not Call Registry, the FCC's implementation of company-specific systems preserves residential telephone subscribers' privacy rights by affording them an opportunity to register objections with callers. "Overall, § 64.1200(d), like § 227(c), is concerned principally with the protection of individual privacy rights."[85] The internal do-not-call registry requirement was promulgated under 47 U.S.C. § 227(c) and incorporates a private right of action.[86] Because they have a private right of action, Plaintiffs have stated claims upon which relief may be granted.

### III. Plaintiffs Class Allegations Are Sufficient to Overcome a Pre-Discovery Class Certification Motion.

Defendants argue that Plaintiffs have not properly pleaded class allegations and that individualized issues will dominate Plaintiffs' proposed class, defeating class cohesiveness.[87] As an initial matter, Defendants variously style this portion of the Motion to Dismiss as a motion under Rule 12(f), 12(b)(6), 23(c)(1)(A), and 23(d)(1)(D) of the Federal Rules of Civil Procedure. The court does not engage in a Rule 12(f) analysis because Defendants do not tether their argument to the language of the rule. *See* Fed. R. Civ. P. 12(f) (allowing the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter"). That is, Defendants do not assert that Plaintiffs' allegations are redundant, immaterial, impertinent, or scandalous. Defendants also argue that Plaintiffs' "speculative class action claim"

---

[85] *Rosenberg v. LoanDepot.com LLC,* 2020 WL 409634, at *11 (D. Mass. Jan. 24, 2020).

[86] The court recognizes that 47 C.F.R. § 64.1200(d) may well have derived from different provisions of the TCPA, including both 47 U.S.C. § 227(c), *see supra*, and 47 U.S.C. § 227(d). *See Cunningham*, 251 F. Supp. 3d at 1200. For example, § 64.1200(d)(4) requires identity disclosures from telemarketers during calls and those "technical and procedural standards" are specifically addressed in the TCPA's § 227(d)(3). *See* 47 U.S.C. § 227(d)(3)(A), (B) (requiring "artificial or prerecorded telephone messages" to identify the business or entity calling and state the caller's address or telephone number).

[87] Motion to Dismiss at 21–25.

should be dismissed under Rule 12(b)(6), but they do not identify a claim for relief that would be the proper subject of a motion to dismiss.[88] Accordingly, the court does not analyze Defendants' arguments under Rule 12(b)(6).

Defendants contend that questions of class member consent to receive calls from Defendants predominate or overwhelm questions common to the class.[89] The class certification procedural joinder device governed by Rule 23 may be employed on the pleadings or before discovery.[90] Although it has affirmed pre-discovery dismissal of class action allegations, the Tenth Circuit has not articulated a distinct standard for evaluating such motions.[91] Generally,

---

[88] *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." (citation and internal quotation marks omitted)); *accord DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010); *see Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010) ("A class action, no less than traditional joinder (of which it is a species), merely enables a federal court to adjudicate claims of multiple parties at once, instead of in separate suits."); *cf. Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 332 (1980) (observing that "the right of a litigant to employ Rule 23 is a procedural right only, ancillary to the litigation of substantive claims"). Moreover, "certification of a class is within the discretionary powers of the trial court," *Baum v. Great W. Cities, Inc., of New Mexico*, 703 F.2d 1197, 1210 (10th Cir. 1983), but not under Rule 12(b)(6). *See Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1100 (10th Cir. 2017) (explaining that a motion to dismiss is proper "if, as a matter of law, the complaint . . . is insufficient" (quoting *Torres v. First State Bank of Sierra County*, 550 F.2d 1255, 1257 (10th Cir. 1977)); *Employees' Ret. Sys. of Rhode Island v. Williams Companies, Inc.*, 889 F.3d 1153, 1161 (10th Cir. 2018) (observing the Tenth Circuit reviews de novo an order granting a Rule 12(b)(6) motion to dismiss).

[89] Motion to Dismiss at 21–22; *see* Fed. R. Civ. P. 23(b)(3) (allowing a class to proceed if the court determines that "the questions of law or fact common to class members predominate over any questions affecting only individual members").

[90] *See* Fed. R. Civ. P. 23 (requiring a court to determine class certification "[a]t an early practicable time after a person sues or is sued as a class representative"); *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (noting "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim"); *Baum*, 703 F.2d at 1210 (10th Cir. 1983) (affirming the trial court's order striking class allegations in the complaint and dismissing the alleged class action).

[91] *See generally Baum*, 703 F.2d at 1210. In a post-discovery certification motion, for example, "[t]he party seeking class certification bears the burden of proving Rule 23's requirements are satisfied." *DG ex rel. Stricklin*, 594 F.3d at 1194; *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc."). Where a defendant files a pre-discovery anti-certification motion, however, the plaintiff may not be "prepared to prove" compliance with Rule 23. Put differently, no party is seeking certification in a preemptive motion to strike class allegations and it is unclear who must bear the burden of proof and persuasion at this stage. In any event, before certifying a class, the court must be "satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011) (citation and internal quotation marks omitted).

however, a class action may be maintained if plaintiffs satisfy Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure.[92]

To maintain a class action, plaintiffs must show, among other things, "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[93] Generally, this inquiry "'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'"[94] "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members."[95] The predominance inquiry requires "careful scrutiny to the relation between common and individual questions in a case."[96] "[A] common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is

---

[92] *See* Fed. R. Civ. P. 23(a), (b). Rule 23(a) requires plaintiff to show: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there is a question of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy). *See Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1217 (10th Cir. 2013) (citing Fed. R. Civ. P. 23(a)). Defendants do not challenge Plaintiffs' class allegations as they pertain to the Rule 23(a) requirements. The court therefore focuses its analysis on Rule 23(b).

[93] Fed. R. Civ. P. 23(a), (b)(3).

[94] *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (observing that class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only" (citation and internal quotation marks omitted)).

[95] *Tyson Foods*, 136 S. Ct. at 1045 (citation and internal quotation marks omitted).

[96] *Id.*

susceptible to generalized, class-wide proof.'"[97] "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member.'"[98]

Here, Plaintiffs generally allege that Defendants engaged in a broad telemarketing campaign, making pre-recorded calls to putative class members without their prior consent.[99] In the pleadings, Plaintiffs allege that they did not consent to the unsolicited calls and texts they received from Defendants.[100] Plaintiffs also indicate that the putative class members did not consent to receive calls.[101] At this stage in the proceedings, however, there are no facts before the court supporting putative class member consent, lack of consent, or revocation of consent. Because the record is bare, consideration of the issue is premature. Absent any evidence on this question, the court cannot engage in the "rigorous analysis" required to determine whether issues common to the class will predominate.[102] This is one of those situations in which it is "necessary for the court to probe behind the pleadings before coming to rest on the certification question."[103] Because the court is unable to determine whether questions of individual putative class member consent will predominate over questions common to the class, Defendants' Motion to Dismiss or to strike class allegations must be denied.

---

[97] *Id.* (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–197 (5th ed. 2012)).

[98] *Id.*

[99] Amended Complaint at ¶¶ 2, 3, 4, 6.

[100] *Id.* at ¶¶ 2, 3, 4, 6.

[101] *Id.*

[102] *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (noting that the Supreme Court has "[r]epeatedly . . . emphasized that it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question, and that certification is proper only if the trial court is satisfied, after a rigorous analysis," that requirements of Rules 23(a) and 23(b) have been met) (citation and internal quotation marks omitted); *see CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1086 (10th Cir. 2014) ("When addressing class certification, the district court must undertake a 'rigorous analysis' to satisfy itself that the prerequisites of Rule 23 of the Federal Rules of Civil Procedure are met." (quoting *Dukes*, 564 U.S. at 350–51)).

[103] *Falcon*, 457 U.S. at 160 (1982).

**ORDER**

For the reasons stated in this Memorandum Decision and Order, Defendant Vivint's Motion to Dismiss Amended Complaint or to Strike Plaintiffs' Class Allegations[104] is DENIED. Defendant DSI Distributing's Motion to Dismiss Amended Complaint or to Strike Class Allegations[105] is DENIED.

Signed May 20, 2020.

BY THE COURT

_____
David Barlow
United States District Judge

---

[104] ECF No. 29.

[105] ECF No. 30.