THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| CRAIG CUNNINGHAM; and ANDREW PERRONG, on behalf of themselves and others similarly situated,<br><br>    Plaintiffs,<br>v.<br><br>VIVINT, INC.; JOHN DOE CORPORATION, d.b.a. NATIONAL SOLAR PROGRAM; and DSI DISTRIBUTING, INC., d.b.a. DSI SYSTEMS,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER DENYING [72] AND [73] MOTIONS FOR PARTIAL SUMMARY JUDGMENT**<br><br>Case No. 2:19-cv-00568-DBB-CMR<br><br>District Judge David Barlow |

Before the court are two motions for partial summary judgment filed by Defendants DSI Distributing and Vivint (collectively, Defendants).[1] Both motions seek summary judgment with respect to the claims of Plaintiff Craig Cunningham. Specifically, they contend that Cunningham released any claims under the Telephone Communications Privacy Act (TCPA) when he executed a pre-suit settlement agreement with the Defendants. Having reviewed the pleadings, the briefing, and relevant law, the court rules as follows.

## BACKGROUND

Plaintiff Craig Cunningham is one of the plaintiffs in this putative class action lawsuit brought against DSI and Vivint, Inc.[2] Cunningham alleges that he received an "automated

---

[1] Motion for Partial Summary Judgment, ECF No. 72; Vivint, Inc. Motion for Partial Summary Judgment Against Craig Cunningham, ECF No. 73.

[2] Second Amended Complaint, ECF No. 86.

telemarketing call from DSI for Vivint" on February 25, 2019, in alleged violation of the Telephone Communications Privacy Act.[3]

Cunningham had "previously complained to Vivint about a series of telemarketing calls, including from DSI" in 2018.[4] As a result of his complaints to Vivint in 2018, Cunningham reached a settlement with Vivint, DSI, and another entity, Trips Marketing, LLC, which was memorialized in a Release and Settlement Agreement (Agreement) dated March 27, 2018.[5] Paragraph 2 of the Agreement states:

> Release by Cunningham. Upon the Effective Date, Cunningham, any predecessor or successor of his, or any other entity or person claiming by, through, or under any of them ("Cunningham Releasing Parties"), hereby releases and forever discharges Vivint, and any predecessor or successor of Vivint's, and its affiliates, agents, attorneys, and representatives ("Vivint Released Parties"), DSI, and any predecessor or successor of DSI's, and its affiliates, agents, attorneys, and representatives ("DSI Released Parties"), and Trips Marketing, LLC and any predecessor or successor of DSI's, and its affiliates, agents, attorneys, and representatives ("Trips Released Parties") of and from any and all claims, counterclaims, crossclaims, actions (including participation in any class), causes of action, suits, contracts, covenants, agreements, promises, trespasses, debts, dues, demands, accounts, bonds, bills, notices, controversies, obligations, liabilities, damages, judgments, executions, liens, encumbrances, claims for contribution and indemnity, losses, costs or expenses of any nature whatsoever, in law or in equity, known or unknown, suspected or unsuspected, asserted or unasserted, fixed or contingent, matured or unmatured, that the Cunningham Releasing Parties at any time had, owned, or held from the beginning of time through the date of this Agreement against the Released Parties (except for any obligations arising under this Agreement). All of the foregoing are hereinafter collectively referred to as "Cunningham's Claims." Cunningham hereby waives the right to commence, institute, participate in or prosecute any lawsuit, action, or other proceeding against the Vivint Released Parties, DSI Released Parties, and Trips Marketing Released Parties relating to, arising from, or in connection with the Telephone Consumer Protection Act or any other telemarketing law.[6]

---

[3] *Id.* at ¶¶ 4, 73; *see generally* ¶¶ 134–43; ECF No. 72 at 3–4.

[4] ECF No. 86 at ¶ 87.

[5] Exhibit 1 to Motion for Partial Summary Judgment, Release and Settlement Agreement, ECF No. 72-2.

[6] *Id.* at ¶ 2.

## STANDARD OF REVIEW

Reviewing a motion for partial summary judgment, the court applies the same standard employed in a summary judgment review.[7] The court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[8] The Court views the evidence in the light most favorable to the nonmoving party and indulges reasonable inferences in its favor.[9] When assessing a contract for the intent of the contracting parties, if the language within the four corners of the agreement is unambiguous, the court considers only the plain meaning of the contractual language, which may be interpreted as a matter of law.[10]

"A contractual term or provision is ambiguous if it is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies."[11] To determine whether a contract provision is ambiguous, the court begins by examining the plain meaning of "the writing alone."[12] Whether a provision is ambiguous on its face is a question of law.[13] While parol evidence may sometimes be considered where ambiguity exists, none has been supplied here.

## ANALYSIS

**I.  Defendants Are Not Entitled to Summary Judgment on their Argument that Cunningham's Telemarketing Claims Are Precluded by his Earlier Agreement with Defendants.**

---

[7] *See Franklin v. Thompson*, 981 F.2d 1168, 1169 (10th Cir. 1992).

[8] Fed. R. Civ. P. 56(a).

[9] *Cillo v. City of Greenwood Village*, 739 F.3d 451, 461 (10th Cir. 2013).

[10] *WebBank v. Am. Gen. Annuity Serv. Corp.*, 2002 UT 88, ¶ 19, 54 P.3d 1139 (citation omitted).

[11] *Daines v. Vincent*, 2008 UT 51, ¶ 25, 190 P.3d 1269 (internal quotation marks omitted) (quoting *WebBank*, 2002 UT 88, ¶ 20).

[12] *Giusti v. Sterling Wentworth Corp.*, 2009 UT 2, ¶ 44, 201 P.3d 966.

[13] *Daines*, 2008 UT 51, ¶ 25.

In this action, Cunningham alleges that Defendants DSI and Vivint violated the TCPA when they sent him unsolicited text messages and automated telephone calls on his cellular phone in 2019.[14] Approximately one year before these alleged texts and calls, Cunningham reached an agreement with Vivint and DSI in settlement of any possible claims arising from similar earlier telemarketing communications he received.[15] The question presented in the instant motions is whether the 2018 Agreement waives all potential future telemarketing violation claims that Cunningham may later obtain, including those raised in the Complaint in this matter.

Utah law governs the Agreement's interpretation and enforcement.[16] "The underlying purpose in construing or interpreting a contract is to ascertain the intentions of the parties to the contract."[17] As noted, when interpreting a contract, the court looks first to the writing itself to determine "if it is capable of more than one reasonable interpretation."[18] In its analysis, the court may "consider the writing in the light of the surrounding circumstances," though extrinsic circumstances must not "create ambiguity where the language of a contract would not otherwise permit."[19] The court considers each provision "in relation to all of the others, with a view toward giving effect to all and ignoring none."[20]

In paragraph 2 of the Agreement, Cunningham "releases and forever discharges Vivint, . . . DSI, . . . , and Trips Marketing, LLC . . . of and from any and all claims," through the

---

[14] ECF No. 86 at ¶¶ 4, 69–95.

[15] *Id.* at ¶ 115; *see* ECF No. 72-2.

[16] ECF No. 72-2 at ¶ 5.

[17] *Green River Canal Co. v. Thayn*, 2003 UT 50, ¶ 17, 84 P.3d 1134 (internal quotation marks omitted) (quoting *WebBank*, 2002 UT 88, ¶ 17).

[18] *Daines*, 2008 UT 51, ¶ 25 (citation and internal quotation marks omitted); *Cafe Rio, Inc. v. Larkin-Gifford-Overton, LLC*, 2009 UT 27, ¶ 25, 207 P.3d 1235.

[19] *Id.* at ¶ 27 (internal quotation marks omitted) (quoting *Ward v. Intermountain Farmers Ass'n*, 907 P.2d 264, 268 (Utah 1995)).

[20] *Id.* (quoting *Green River Canal Co.*, 2003 UT 50, ¶ 17).

date of the Agreement.[21] The clear and undisputed intention of this provision is for Cunningham to disclaim any causes of action he may have against Defendants up to the date of the Agreement.

> However, the parties disagree about the meaning of the next sentence:
>
> Cunningham hereby waives the right to commence, institute, participate in or prosecute any lawsuit, action, or other proceeding against the Vivint Released Parties, DSI Released Parties, and Trips Marketing Released Parties relating to, arising from, or in connection with the Telephone Consumer Protection Act or any other telemarketing law.[22]

Under this provision, Cunningham generally waives his right to file suit against Defendants on matters involving telemarketing law, though the temporal scope of the waiver is undefined. Defendants argue that the failure to limit the waiver to then-existing claims constitutes an open-ended waiver of all potential future claims.[23] On the other hand, Cunningham contends that the waiver sentence is informed by the immediately preceding release language, which is limited to claims "held from the beginning of time through the date of this Agreement [March 2018]."[24]

"Waiver is an intentional relinquishment of a known right."[25] An effective waiver requires "(1) an existing right, benefit, or advantage; (2) knowledge of its existence; and (3) an intention to relinquish the right."[26] Whether express or implied, a waiver of a right "must be distinctly made."[27]

---

[21] ECF No. 72-2 at ¶ 2.

[22] *Id.*

[23] *See* ECF No. 72 at 7.

[24] ECF No. 74 at 3–6.

[25] *Wilson v. IHC Hosps., Inc.*, 2012 UT 43, ¶ 61, 289 P.3d 369 (citation and internal quotation marks omitted).

[26] *Id.* (citation and internal quotation marks omitted).

[27] *Soter's, Inc. v. Deseret Fed. Sav. & Loan Ass'n*, 857 P.2d 935, 940 (Utah 1993).

Here, the waiver provision is facially ambiguous, making the readings that both sides urge possible. The waiver contains no temporal limitation, so it could be read as a forever ban under any existing or potential future circumstances. However, whether the parties intended such a broad waiver remains a question of fact.

The provision is also susceptible to another, more limited, interpretation. It immediately follows a sentence in which Cunningham releases existing claims. Because it does not explicitly expand the temporal scope from the previous sentence ("from the beginning of time through the date of this Agreement [March 2018]"),[28] the sentence could be read as a waiver of the right to file suit on only claims arising after March 2018. The calls and messages of which Cunningham complains in this case occurred in 2019.[29] The intent to waive a right must be expressed with a "clear reference" to the concept of waiver of all future claims.[30] The court "will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is explicitly stated."[31] Accordingly, the waiver provision's ambiguity requires the denial of the motions for partial summary judgment. Defendants have failed to establish that there is no genuine issue of material fact and that they are entitled to judgment as a matter.

---

[28] ECF No. 72-2, Exhibit 1, at ¶ 2.

[29] ECF No. 86, 12–15.

[30] *See Medley v. Medley*, 2004 UT App 179, ¶ 10, 93 P.3d 847.

[31] *Metro. Edison Co. v. N.L.R.B.*, 460 U.S. 693, 708 (1983).

## ORDER

For the reasons stated in this Memorandum Decision and Order, Defendant DSI's motion for partial summary judgment is DENIED.[32] Defendant Vivint's motion for partial summary judgment also is DENIED.[33]

Signed May 28, 2021.

BY THE COURT

David Barlow
United States District Judge

---

[32] ECF No. 72.

[33] ECF No. 73.