THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| CRAIG CUNNINGHAM, ROBERT HOSSFELD and ANDREW PERRONG, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VIVINT, INC., and DSI DISTRIBUTING, INC. d.b.a DSI SYSTEMS,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING [138] AND [156] DEFENDANTS' MOTIONS TO DENY CLASS CERTIFICATION AND DENYING [145] PLAINTIFFS' MOTION FOR CLASS CERTIFICATION<br><br><br>Case No.: 2:19-cv-00568-DBB-CMR<br><br>District Judge David Barlow<br>Magistrate Judge Cecilia M. Romero |

This matter is before the court on three separate motions regarding class certification:

Defendant DSI's Motion for Order Denying Class Certification to Plaintiffs (DSI's Motion),[1]

Defendant Vivint, Inc.'s Motion to Deny Class Certification as to Plaintiffs Cunningham and

Perrong (Vivint's Motion),[2] and Plaintiffs' Motion for Class Certification (Plaintiffs' Motion).[3]

Having considered the briefing,[4] the record, and the relevant law, the court concludes the

---

[1] ECF No. 156, filed March 14, 2022. This motion was originally filed as ECF No. 132 on November 30, 2021, but later changes were made to redact and seal portions of the motion and its exhibits, resulting in a new ECF number for the original pending motion, even though the substance of the motion had not changed. *See* Docket Entries, ECF Nos. 157 & 158. The court provides citations to the original motion at ECF No. 132 as well as the exhibits attached thereto.

[2] ECF No. 138, filed December 17, 2021.

[3] ECF No. 145, filed February 2, 2022.

[4] In addition to the motions listed, the court refers to the following: Plaintiffs' Memorandum in Opposition to Defendant DSI's Motion (Plaintiffs' Opposition), ECF No. 134, filed December 14, 2021; DSI's Reply in Support

(continued...)

motions may be resolved without oral argument.[5] For the reasons discussed below, DSI's and

Vivint's Motions are GRANTED and Plaintiffs' Motion is DENIED.

## BACKGROUND

At issue are alleged violations of the Telephone Consumer Protection Act (TCPA)

involving calls and text messages to Plaintiffs. Plaintiff Perrong's number is on the Do Not Call

Registry.[6] Perrong alleges that he received two automated telemarketing calls promoting Vivint

products on April 4 and June 5, 2019.[7] Perrong ignored the first call but answered the second.[8]

The representative said he was calling from Vivint.[9] Perrong confirmed an appointment with

Vivint, and gave his credit card number in order to confirm Vivint's involvement.[10] On June 5,

2019, Perrong informed compliance counsel for Vivint that he was illegally called and did not

want to receive any more calls.[11] Yet Perrong received additional text messages on June 12 and

13, 2019.[12] Perrong was sent another text message on September 25, 2019 after filing this

lawsuit.[13] Perrong admits that DSI did not text him.[14]

---

of Motion for Order Denying Class Certification (DSI's Reply), ECF No. 140, filed December 28, 2021; Plaintiffs' Memorandum in Opposition to Vivint's Motion (Plaintiffs' Opposition), ECF No. 142, filed January 14, 2022; Vivint's Reply in Support of Motion to Deny Class Certification (Vivint's Reply), ECF No. 143, filed January 25, 2022; Vivint's Opposition to Plaintiffs' Motion for Class Certification (Vivint's Opposition), ECF No. 153, filed March 7, 2022; DSI's Opposition to Plaintiffs' Motion (DSI's Opposition), ECF No. 159, filed March 14, 2022; Plaintiffs' Reply Memorandum in Support of Motion for Class Certification (Plaintiffs' Reply), ECF No. 177, filed April 11, 2022.

[5] *See* DUCivR 7-1(g).

[6] *Id.* at ¶ 46.

[7] Second Amended Complaint at ¶¶ 49, 54.

[8] Second Amended Complaint at ¶ 50.

[9] *Id.* at ¶ 55.

[10] *Id.* at ¶ 57.

[11] *Id.* at ¶ 59.

[12] *Id.* at ¶¶ 61–63.

[13] *Id.* at ¶ 66.

[14] *See* Perrong's Response to Requests for Admission at 1–2.

Plaintiff Cunningham alleges he received an automated telemarketing call on behalf of Vivint on February 25, 2019.[15] The representative promoted Vivint's products.[16] He confirmed Vivint's involvement the next day when Vivint contacted him directly to confirm an appointment.[17] Cunningham informed Vivint that he was not interested.[18] Yet Cunningham later received two text messages promoting Vivint products on July 30, 2019 and August 2, 2019.[19] Cunningham had previously complained to Vivint about telemarketing calls and was informed in November 2018 that his number was added to Vivint's internal Do Not Call List.[20] Cunningham responded to the text message that he did not want to be contacted, which Vivint acknowledged.[21] Yet, a little over a month later on September 25, 2019, Cunningham received another text message.[22] Cunningham admits that DSI did not text him.[23]

There have been six scheduling orders in this case; class discovery was bifurcated from other deadlines.[24] Defendants opposed extending the class discovery deadlines on two occasions.[25] On another occasion, Defendants and Plaintiffs submitted competing amended

---

[15] *Id.* at ¶ 73.

[16] Second Amended Complaint at ¶ 76.

[17] *Id.* at ¶ 77.

[18] *Id.* at ¶ 78.

[19] *Id.* at ¶¶ 80–82, 93.

[20] *Id.* at ¶¶ 87–88.

[21] *Id.* at ¶¶ 91–92.

[22] *Id.* at ¶ 93.

[23] Cunningham Response to Requests for Admission at 1–2.

[24] *See* Scheduling Orders, ECF Nos. 22, 56, 68, 101, 121, 128.

[25] *See* DSI Opposition, ECF No. 94, filed January 28, 2021; DSI Opposition, ECF No. 100, filed February 5, 2021.

scheduling orders.[26] After the various extensions, the time for class discovery ultimately expired on July 14, 2021.[27]

    Over four months after the close of class discovery, DSI preemptively moved to deny class certification.[28] A few weeks later, Vivint also preemptively moved to deny class certification.[29] Roughly two months after Vivint filed its motion, and almost seven months after the close of class discovery, Plaintiffs then moved for class certification.[30]

    Plaintiffs seek certification and to represent three separate nationwide classes involving (1) persons who received two or more telemarketing calls on behalf of Vivint when their numbers were on the National Do Not Call Registry, (2) persons who received telemarketing calls on behalf of Vivint using an automatic telephone dialing system, and (3) persons who received telemarketing calls on behalf of Vivint when Vivint did not maintain any internal procedures to prevent improper calls.[31]

    Plaintiffs seek injunctive relief under Rule 23(b)(2) to "bring Vivint and DSI into compliance with the TCPA, monitor DSI's subvendors' practices of gathering consent, and establishing Do Not Call practices that prevent more of the same unwanted calls that have persisted despite the pendency of this lawsuit."[32]

---

[26] *See* DSI and Vivint's Joint Motion, ECF No. 118, filed April 26, 2021; Plaintiffs' Response to Defendants' Joint Motion, ECF No. 120, filed April 30, 2021.
[27] *See* Scheduling Order dated June 23, 2021, ECF No. 128.
[28] *See* DSI's Motion, ECF No. 132.
[29] *See* Vivint's Motion.
[30] *See* Plaintiffs' Motion.
[31] *See* Plaintiffs' Motion at 2.
[32] Plaintiffs' Motion at 6.

## STANDARD

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."[33] Federal Rule of Civil Procedure 23(a) allows individuals to litigate on behalf of a class only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.[34]

These requirements are known, respectively, as the "numerosity," "commonality," "typicality," and "adequacy" requirements.

If the requirements of Rule 23(a) have been met, the party seeking class certification must then show that the proposed class action is maintainable under Rule 23(b).[35] Here, Plaintiffs seek certification under Rule 23(b)(2).[36] Rule 23(b)(2) permits a class action when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

---

[33] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)).

[34] Fed. R. Civ. P. 23(a)(1)–(4).

[35] *Shook v. El Paso Cnty.*, (*Shook I*) 386 F.3d 963, 971 (10th Cir. 2004) ("If the court finds that the plaintiffs have met [Rule 23(a)'s] threshold requirements, 'it must then examine whether the action falls within one of three categories of suits set forth in Rule 23(b).'" (citation omitted)).

[36] Plaintiffs' Motion at 2. The court notes that Defendants make some arguments regarding requirements for 23(b)(3) or based on 23(b)(3) cases. Because they are inapposite, the court does not discuss them.

The party seeking class certification "must show 'under a strict burden of proof' that all four [Rule 23(a)] requirements are clearly met."[37] And the court is required to conduct a "rigorous analysis" to assure that the parties seeking class certification have met their burden.[38]

## ANALYSIS

## I.   PLAINTIFFS CANNOT REPRESENT A CLASS AGAINST DSI.

Plaintiffs have failed to meet their burden to show they can represent a class against DSI. Plaintiffs complain of violations of the TCPA through calls and texts on behalf of Vivint. However, Plaintiffs have not produced any evidence that DSI called or texted them, let alone any other putative class member. In fact, they admit that DSI did not directly call or text them.[39] Therefore, there is no basis for the court to certify a class against DSI, let alone allow Plaintiffs to serve as representatives of that class.

---

[37] *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006) (quoting *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988)).

[38] *Wal-Mart*, 564 U.S. at 350–51 ("[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982))).

[39] *See* Perrong's Response to Requests for Admissions at 1–2, ECF No. 132-3; Cunningham's Response to Requests for Admissions at 1–2, ECF No. 132-7. In the factual background section of Plaintiffs' Motion, Plaintiffs refer to calls and texts from "Vivint and DSI" or "a vendor of DSI" that they received, citing to the Second Amended Complaint and interrogatory responses. Plaintiffs' Motion at 4-5. Allegations in the complaint do not serve as evidence to meet Plaintiffs' burden regarding class certification. Furthermore, the interrogatory responses pre-date Plaintiffs' responses to the Requests for Admissions which admit that DSI did not call or text them. *Compare* Plaintiffs' Responses to Requests for Admission, ECF Nos. 132-3 & 132-7 (dated February 22, 2021) *with* Perrong's Responses to DSI's First Set of Interrogatories at 3–4, ECF No. 145-4 (dated September 30, 2020) *and* Perrong's Supplemental Responses at 1–2, ECF No. 145-6 (dated December 21, 2020 and indicating that it was "unknown" whether DSI initiated the relevant calls) *and* Cunningham's Supplemental Responses to DSI's First Set of Interrogatories at 1–8 (dated December 21, 2020 and indicating that he "suspects" the calls and texts were "initiated directly or indirectly by DSI"). Plaintiffs' suspicions and allegations that the calls they received might have been from DSI or its affiliates are simply insufficient grounds on which to certify a class.

There are two types of conduct at issue: calls and texts related to Vivint's products.

Perrong has admitted that DSI "did not place any telephone calls and/or text messages" to him.[40]

Cunningham has also admitted that DSI "did not place any telephone calls and/or text messages"

to him.[41] Instead, Plaintiffs argue that one of DSI's subvendors likely made the calls to them,[42]

but they have not cited any evidence supporting that claim. Plaintiffs contend that they have not

been able to obtain call records from some of DSI's subvendors, suggesting that there might be

evidence out there, but they have been unable to find it.[43] This is insufficient to support a class

certification against DSI. The time for class discovery, after multiple extensions, has long since

expired. The inability to develop evidence, under certain circumstances, might be grounds for a

motion to extend the discovery deadline, but it cannot be used to meet Plaintiffs' class

certification burden.

Similarly, as already noted, both Plaintiffs admit that DSI did not send any text messages

to them.[44] In fact, the evidence presented shows that the text messages in question were sent

through the "Callfire" system[45] from a Vivint employee's personal accounts with that system.[46]

---

[40] Perrong's Responses to Requests for Admissions at 1–2.

[41] Cunningham's Responses to DSI's Requests for Admissions at 1–2, ECF No. 132-7.

[42] *See, e.g.*, Plaintiffs' Reply at 5–6; *see also* Perrong's Supplemental Responses to DSI's First Set of Discovery Requests at 5–6, ECF No. 132-2 (stating that "DSI hired vendors to conduct telemarketing campaigns for Vivint"); Cunningham's Supplemental Responses to DSI's First Set of Discovery Requests at 9, ECF No. 132-6 (stating that "DSI hired vendors to conduct telemarketing campaigns for Vivint").

[43] *See* Plaintiffs' Reply at 5–6.

[44] Perrong's Responses to DSI's Requests for Admissions at 1–2, ECF No. 132-3; Cunningham's Responses to DSI's Requests for Admissions at 1–2, ECF No. 132-7.

[45] This is also referred to as "EZ Texting."

[46] *See* Vivint's Opposition at 2–3; Shannon Donohue Depo. at 45:19–21, Ex. 2 to Donohue Depo. (noting the five text messages identified in the Second Amended Complaint came from two subscribers, Scott Bell and Jerm Bell, with personal email addresses used to set up the accounts), ECF No. 152-1; *see also* Scott Bell Depo. at 19:13–19, ECF No. 152-2 (noting that he set up an account).

Scott Bell was a Vivint employee and admitted to sending some of the text messages at issue.[47] The Callfire records show that Scott Bell or others on his account attempted to send approximately 183,000 texts messages between June 11 and September 26, 2019.[48] And the only source from which Scott Bell obtained the numbers to which he sent the text messages came from Vivint's records.[49]

Plaintiffs have not shown any evidence or even argued any connection between the Callfire texts sent between June and September 2019 and DSI. All the evidence shows they came from a Vivint employee or those using his accounts. Plaintiffs do not address the arguments about the lack of a connection between DSI and the text messages.[50] This plainly cannot support a class against DSI involving texts.

Because Plaintiffs have not clearly shown that they are even members of any class against DSI,[51] or that there are numerous putative class members awaiting certification, they cannot serve as representatives for any class against DSI.[52] Therefore, the court must deny the request to certify any class against DSI.

---

[47] Scott Bell Depo. at 7:17–23, 16:5–7, ECF No. 152-2. Scott Bell was terminated from Vivint on August 2, 2019. *See id.* at 38:23–24.

[48] Scott Bell Depo. at 20:17–20 (indicating that he had access to that account and did not recall anyone else having access); Declaration of Nathan Marigoni at ¶ 5, ECF No. 152-4 (summarizing the records to indicate that 183,000 text messages were sent).

[49] Scott Bell Depo. at 30:2–31:32:6 (indicating various sources from which he pulled telephone numbers).

[50] *See, e.g.*, Plaintiffs' Reply at 5–6.

[51] Nor have they shown that there is any putative class member that has been injured by DSI.

[52] Plaintiffs argue in opposition to DSI's motion to deny class certification that "five different DSI vendors have called Plaintiffs" and there are "massive problems with Vivint and DSI's telemarketing program." Plaintiffs' Opposition at 3-4, ECF No. 134. But Plaintiffs do not cite any record evidence identifying which five DSI vendors allegedly called Plaintiffs or any other class member. Additionally, in Plaintiffs' own motion seeking certification, they note that they are relying only on the texting records, not any call records from DSI or its vendors. Plaintiffs' Motion at 8. Similarly, in their reply, Plaintiffs again admit they do not have call records from DSI or its vendors and ask the court to make an unsupported connection that DSI's vendors "clearly didn't just call Plaintiffs; they conducted automated telemarketing campaigns for DSI and Vivint." Again, Plaintiffs cite no record evidence

(continued...)

Finally, even if Plaintiffs had met their burden of identifying record evidence involving

DSI, no class could be certified for the reasons stated below.

## II.    PLAINTIFFS HAVE NOT MET THEIR BURDEN OF SHOWING THAT THEY SHOULD REPRESENT A CLASS AGAINST VIVINT.

Plaintiffs seek certification of the following three classes:

National Do Not Call Registry Class

> All persons within the United States to whom: (a) Defendants, and/or a third party acting on their behalf, made at least two telephone solicitation calls during a 12-month period; (b) to a residential telephone number; (c) that had been listed on the National Do Not Call Registry for more than 31 days prior to the first call; (d) promoting the goods or services of the Defendants; (e) at any time in the period that begins four years before the date of filing the Complaint to trial.

Automated Call Class

> All persons within the United States to whom: (a) Defendants, and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) to their cellular telephone number or number that is charged per call; (c) using an automatic telephone dialing system or an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of the filing of the Complaint to trial.

Internal Procedures Class

> All natural persons within the United States to whom: (a) Vivint and/or a third party acting on its behalf, made two or more calls in a 12-month period; (b) which constitute telemarketing; (c) at any time in the period that begins four years before the date of the filing of the Complaint to trial.

Plaintiffs argue that the Rule 23(a) requirements are met because (1) Vivint sent the class over

180,000 texts, (2) there are five common issues of fact and law, (3) the claims are typical

because the Defendants subjected Plaintiffs to a nearly identical course of conduct, (4) Plaintiffs

---

supporting the claim that DSI or any of its vendors made the calls to them or anyone else. They often rely on their "belief" or "suspicion" that DSI or its vendors made the calls; this is insufficient. There may be record evidence that DSI and/or its vendors made calls to Plaintiffs and others, but Plaintiffs have not cited any such evidence.

and counsel are adequate representatives because there are no conflicts and both have experience

litigating TCPA class actions, and (5) injunctive relief is necessary because filing the lawsuit did

not end the injuries the class continues to experience.[53] The court will address each argument in

turn.[54]

### A.  Numerosity

A class may be certified only when "the class is so numerous that joinder of all members

is impracticable."[55] Plaintiffs bear the burden of showing that a class is sufficiently numerous,

but there is no specific formula or numerical threshold.[56]

Plaintiffs argue that there are records that indicate that Vivint sent the class over 180,000

text messages, thereby meeting the numerosity requirement.[57] Defendants[58] have provided

evidence that a large number of the texts potentially were not violative because the consumer

consented[59] to receive the text, had an existing business relationship (EBR)[60] with Vivint, or the

---

[53] Plaintiffs' Motion at 7–13.

[54] Because the court determines the Rule 23(a) factors are not met, it does not address the arguments regarding whether Rule 23(b)(2) has been met. Plaintiffs must meet requirements of both Rule 23(a) and (b) to obtain class certification. *See Shook I*, 386 F.3d at 971 (noting that "if" the court determines Rule 23(a) has been met, then it moves to the 23(b) analysis).

[55] Fed. R. Civ. P. 23(a)(1).

[56] *Colo. Cross Disability Coal. v. Abercrombie & Fitch*, 765 F.3d at 1215. Unlike some other circuits, the Tenth Circuit has declined to adopt the position that "numerosity may be presumed at a certain number." *Trevizo*, 455 F.3d at 1162.

[57] Plaintiffs' Motion at 8.

[58] DSI and Vivint filed separate oppositions to Plaintiffs' Motion. *See* ECF Nos. 153 & 159. However, DSI joined in Vivint's Opposition and incorporated a majority of its arguments. *See* DSI's Opposition at 4, 6, 8. For this reason, the court often refers to "Defendants" or "Defendants' arguments."

[59] *See* Declaration of Loren Woodley at ¶¶ 5–6, ECF No. 152-5 (providing that "at least 10,370 unique telephone contact consent form submissions from Vivint.com [are] associated with a telephone number in the records produced by Callfire").

[60] Woodley Decl. at ¶¶ 7–8 (indicating that "more than 44,000 of the telephone numbers at issue had made inbound calls to Vivint's national inside sales call center prior to receiving a text message through Callfire").

text was sent to a business number.[61] Even accepting that the samples that Defendants rely on show that roughly 55,000 texts might be excluded, that still leaves more than 100,000 other texts not accounted for in the putative class. Based on the text records presented, the numerosity requirement is met.

### B. Commonality

To satisfy Rule 23's commonality requirement, Plaintiffs must show that class members' claims "depend upon a common contention" and, more importantly, that the common contention is "of such a nature that it is capable of classwide resolution."[62] An issue can be resolved on a classwide basis when "the same evidence will suffice for each member to make a prima facie showing [or the issue is susceptible to generalized, class-wide proof."[63] As the Supreme Court and the Tenth Circuit have noted, "the focus of Rule 23(a)(2)'s commonality requirement is not so much on whether there exist common *questions*, but rather on 'the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.'"[64] The class need not share *all* issues or facts in common for a class action to be appropriate, however; a single common question can be enough.[65]

Plaintiffs argue that there are five common issues of law and fact including: "(1) whether Vivint and DSI violated the TCPA by using automated calls to contact putative members'

---

[61] Daley Report at ¶¶ 81–86, ECF No. 152-7 (describing a sample of approximately 240 numbers where 14% were associated with businesses or governmental agencies).

[62] *Wal-Mart*, 564 U.S. at 350.

[63] *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (alteration in original) (quoting 2 W. Rubenstein, *Newberg on Class Actions* § 4:50, at 196–97 (5th ed. 2012)).

[64] *Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 789 (10th Cir. 2019) (citing *Wal-Mart*, 564 U.S. at 349–50)).

[65] *Wal-Mart*, 564 U.S. at 359.

cellular telephones; (2) whether Vivint and DSI violated the TCPA's Do Not Call provisions; (3) whether Vivint and DSI's agents initiated calls without obtaining the recipients' prior express invitation or permission for the call; (4) whether Vivint and DSI are vicariously liable for the telemarketing conduct of their agents; and (5) whether Plaintiffs and the class members are entitled to injunctive relief because of Vivint and DSI's actions."[66]

Defendants argue that each of these alleged common questions fails because the class is based on "two entirely different courses of conduct," namely an alleged telemarketing campaign conducted by DSI or its agents and a text-messaging campaign conducted by a former Vivint employee.[67] Defendants argue that Plaintiffs' proposed five common questions cannot be resolved for the class with one answer.[68] Plaintiffs respond by saying this concern can "easily be addressed by creating a subclass"[69] for calls and text messages, yet they do not provide any such proposed revision to the class definitions.

Defendants also argue that the answer to the alleged common questions will "depend on resolution of all the individualized issues" like "whether consent or an [existing business relationship] exists, and whether the recipient was a residential telephone subscriber."[70] Plaintiffs respond by arguing that these are "quintessential predominance arguments, and predominance is not a requirement for a 23(b)(2) class."[71] The court disagrees that this argument is only a

---

[66] Plaintiffs' Motion at 8–9.
[67] Vivint's Opposition at 37.
[68] *See id.*
[69] Plaintiffs' Reply at 6–7.
[70] Vivint's Opposition at 37.
[71] Plaintiffs' Reply at 7.

predominance question.[72] As the Tenth Circuit has instructed, the inquiry is whether the classwide proceeding will generate common *answers* to drive resolution of the litigation.[73] Individualized issues can sometimes defeat commonality even where there is no predominance requirement because they may preclude common answers to the questions posed by Plaintiffs.

As to Plaintiffs' first proposed common question, "whether Vivint and DSI violated the TCPA by using automated calls," the only record evidence cited by Plaintiffs[74] of any calls being made are the calls to Perrong and Cunningham.[75] Plaintiffs have not identified any other evidence that Defendants violated the TCPA through improper calls to any other number. Accordingly, Plaintiffs have not shown that this issue is common to the class.

Second, "whether Vivint and DSI violated the TCPA's Do Not Call provisions" depends on individualized inquiries, including whether the recipient's number was on that registry and whether the recipient consented to the call or had an existing business relationship with Vivint.

---

[72] The court notes that despite Defendants' repeated references to predominance, superiority, and, most often of all, ascertainability, none of these are requirements of a 23(b)(2) class. *See Shook v. El Paso Cnty.*, (*Shook I*) 386 F.3d 963, 972 (10th Cir. 2004) ("However, while the lack of identifiability is a factor that may defeat Rule 23(b)(3) certification, such is not the case with respect to class certification under Rule 23(b)(2). In fact, many courts have found Rule 23(b)(2) well suited for cases where the composition of a class is not readily ascertainable; for instance, in a case where the plaintiffs attempt to bring suit on behalf of a shifting prison population." (internal citation omitted); *see also Shook v. Bd. of Cnty. Comm'rs of Cnty. of El Paso*, (*Shook II*) 543 F.3d 597, 611 (10th Cir. 2008) ("The difference, we observed, is that Rule 23(c)(2) makes notice mandatory for (b)(3) classes but optional for (b)(2) classes, and thus concerns relevant to providing notice—such as identifiability—are not properly part of the (b)(2) calculus.").

[73] *See Naylor Farms*, 923 F.3d at 789.

[74] Plaintiffs allege that others were called but never identify any record evidence that clearly supports the claim.

[75] *See, e.g.*, Perrong's Responses to DSI's First Set of Discovery Requests at 3–4, 6–7, ECF No. 132–1 (providing information of calls on April 4, 2019, June 5, 12, 13, 14, 2019 and text messages on June 15, 2019, September 21, 26, 2019); Cunningham's Responses to DSI's First Set of Discovery Requests at 4–8, ECF No. 132-4. Both Plaintiffs' Motion and Reply note that they did not obtain calling records. *See* Plaintiffs' Motion at 8; Plaintiffs' Reply at 5–6.

Plaintiffs have not shown how there would be a common answer to this question that is not dependent on individualized inquiries.

Third, "whether Vivint and DSI's agents initiated calls without obtaining the recipients' prior express invitation or permission for the call" will not generate a common answer among the class. Consent obviously requires individualized inquiry.

Fourth, issues about vicarious liability conceptually have the potential for commonality. Plaintiffs contend that "Vivint's vicarious liability for calls made pursuant to its relationship with DSI is another common question, as is Vivint's liability for its employees' text messages."[76] But Plaintiffs have admitted they were not called by DSI and have produced no evidence that any particular DSI agent called them. And "Vivint's liability for its employees' text messages" seemingly would include the consent and EBR issues identified above. Without more from Plaintiffs to meet their burden, the court is unable to conclude that the resolution of the vicarious liability question is common to the class.

Fifth, "whether Plaintiffs and the class members are entitled to injunctive relief" is not obviously a question with a common answer. Defendants argue that this merely restates the ultimate question of liability.[77] Plaintiffs do not specifically respond to this argument.[78] While this may be a mixed question that could be common to the class, whether Plaintiffs and the class are entitled to the relief sought will ultimately depend on all the other issues addressed by the court like consent, existing business relationship, and whether the phone number called was residential or business. Whether or not Plaintiffs can obtain that relief depends on whether there

---

[76] Plaintiffs' Reply at 7.
[77] Vivint's Opposition at 38.
[78] *See generally* Plaintiffs' Reply.

was a violation of the TCPA, and there are individualized inquiries necessary to make that ultimate determination.

Having said that, the court believes there likely are "common *answers* apt to drive the resolution of the litigation"[79] that could be identified in this case. But Plaintiffs have failed to meet their burden to make such a showing based on their five proposed common questions.[80] That these issues might be broken down and recast, or other issues identified, does not provide the court a basis for concluding that *Plaintiffs* have met their burden to show common questions that will produce common answers for the entire class.

### C.  Typicality

Rule 23's typicality and adequacy requirements "tend to merge" because both concern the relationship between the proposed class representatives and other class members.[81] The typicality inquiry focuses on whether class representatives' interests are sufficiently aligned with those of the other class members because of claims and injuries they share in common.[82] The

---

[79] *Naylor Farms*, 923 F.3d at 789 (citing *Wal-Mart*, 564 U.S. at 349–50).

[80] The failure to identify and frame such common questions after lengthy class discovery, as well as Plaintiffs' devoting just two paragraphs with no analysis to this issue in their motion to certify, is obviously relevant to the adequacy requirement as well. *See* Plaintiffs' Motion at 8–9.

[81] *See Falcon*, 457 U.S. at 158 n.13; *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1219 (10th Cir. 2013).

[82] Fed. R. Civ. P. 23(a)(3); *see also Falcon*, 457 U.S. at 26 (1997) ("[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." (quoting *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977))); *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010) ("The interests and claims of Named Plaintiffs and class members need not be identical to satisfy typicality."). The typicality requirement also "limit[s] the class claims to those fairly encompassed by the named plaintiff's claims." *Gen. Tel. Co. of the Nw. v. Equal Emp. Opportunity Comm'n*, 446 U.S. 318, 330 (1980). Typicality's focus on whether claims and injuries are shared in common means that it "tend[s] to merge" with the commonality requirement as well. *See Falcon*, 457 U.S. at 158 n.13.

alignment of interests ensures that class representatives will advance and protect the interests of the entire class simply by virtue of pursuing their own.[83]

Plaintiffs argue that typicality is met because the Defendants subjected them and the class to a "nearly identical course of conduct, and thus the Plaintiffs' claims are based on the same legal theories as the class."[84] Defendants disagree and argue that Perrong's claims are not typical because his phone number at issue is not a residential telephone line.[85] His number is associated with his business and was provided as the contact number when registering the company's business domain.[86] Plaintiffs' response is that this defense is not unique to Perrong, and Defendants will make this argument across the National Do Not Call and Internal Procedures classes.[87] That may be so, but the class ultimately would include only those who received an unauthorized call on a residential number, as that is what the TCPA requires.[88] Obviously, Perrong's claims would not be typical of the class if his number is a business number rather than a residential number. Plaintiffs fail to respond to Defendants' arguments on this in a manner that shows they have met their burden.

Defendants further argue that Cunningham is subject to a unique defense based on his earlier settlement agreement and release with Vivint and DSI, thus destroying typicality.[89] Plaintiffs respond by arguing that the court "already rejected that argument," and "[t]his legal

---

[83] *See Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006) (explaining that a "representative party's interest in prosecuting his own case must simultaneously tend to advance the interests of the absent class members" to establish typicality).

[84] Plaintiffs' Motion at 10.

[85] Vivint's Opposition at 39–40.

[86] Expert Report of Margaret Daley at 31, ECF No. 152-7.

[87] Plaintiffs' Reply at 8 (citing Vivint's Opposition at 28–31).

[88] *See* 47 U.S.C. § 227(b)(1)(B) (prohibiting certain calls to residential phone lines).

[89] Vivint's Opposition at 40.

issue has already been decided; it will not be a focus of the trial."[90] Plaintiffs inaccurately describe the court's prior order. The court previously denied Defendants' motions for partial summary judgment.[91] Both Defendants sought summary judgment with respect to Cunningham's claims based on a pre-suit settlement agreement.[92] The court concluded the waiver provision was ambiguous and contained no temporal limitation.[93] Because the scope of the waiver was ambiguous, there was a genuine issue of material fact as to the intent to release all future claims.[94] The court concluded that this factual dispute prevented summary judgment, but it did not determine the waiver was inapplicable.[95] Contrary to Plaintiffs' argument, the issue of the scope of Cunningham's waiver is unresolved. And it weighs against concluding that Cunningham's claims are typical of the proposed classes since he is subject to this unique defense.

Defendants next argue that Plaintiffs are not typical because they are serial TCPA litigants.[96] Plaintiffs respond by stating that the "Court already rejected [this argument] at the pleading stage, calling it 'not tethered to the language of the statute' or Plaintiffs' causes of action."[97] Again, Plaintiffs misunderstand the court's previous ruling. The court denied Defendants' motions to dismiss for lack of standing.[98] Defendants argued that Plaintiffs did not have statutory standing because their "alleged economic motivations set them outside the

---

[90] Plaintiffs' Reply at 8.
[91] Memorandum Decision and Order dated May 28, 2021, ECF No. 123.
[92] *Id.* at 1.
[93] *Id.* at 6.
[94] *Id.* (determining that "whether the parties intended such a broad waiver remains a question of fact").
[95] *See id.*
[96] Vivint's Opposition at 40–42.
[97] Plaintiffs' Reply at 8.
[98] Memorandum Decision and Order dated May 20, 2020, ECF No. 58.

TCPA's zone of interest."[99] The court determined that, at the motion to dismiss stage, Plaintiffs had alleged sufficient facts to bring them "within the zone of the privacy rights the TCPA protects."[100] The court did not have before it any question about the impact of Plaintiffs' serial litigation on potential class certification. Simply put, standing to bring an individual claim is necessary, but not sufficient, to represent a class.

The typicality issue now before the court is whether Plaintiffs' interests are aligned with that of the rest of the class. It is undisputed that Plaintiffs are differently situated than the remainder of the class who are not professional litigants. Both Plaintiffs have filed hundreds of TCPA cases.[101] Both Plaintiffs maintain a PACER account to monitor litigation.[102] It is reasonable to believe that Plaintiffs' incentives might differ from the remainder of the class. In fact, Plaintiffs admit that they seek injunctive relief for the class but will pursue individual damages for themselves.[103] All of these things may or may not be distinctions with a difference, but Plaintiffs have not provided the court with any support to find that their professional plaintiffs status does not interfere with typicality. Plaintiffs also do nothing to rebut Defendants' arguments on the foregoing points. Once again, Plaintiffs fail to meet their burden.

### D.  Adequacy

The adequacy inquiry focuses on "uncover[ing] conflicts of interest between named parties and the class they seek to represent"[104] that may prevent them from "fairly and adequately

---

[99] *Id.* at 9.

[100] *Id.* at 10.

[101] *See* Perrong Deposition at 160:14-22, ECF No. 153-1; Cunningham's Supplemental Responses to DSI's Interrogatories at 1–8, ECF No. 132-6.

[102] Perrong Deposition at 161:12–13; Cunningham Deposition at 101:13–102:15.

[103] Plaintiffs' Oppositions at 3, ECF Nos. 134 & 142.

[104] *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

protect[ing] the interests of the class."[105] In evaluating adequacy, the Tenth Circuit has instructed

district courts to ask two questions: "(1) do the named plaintiffs and their counsel have any

conflicts of interest with other class members and (2) will the named plaintiffs and their counsel

prosecute the action vigorously on behalf of the class?"[106]

The court addresses the vigorous prosecution requirement first. Until November 30,

2021, the District of Utah's local civil rules of procedure stated as follows:

> Unless the court otherwise orders, the proponent of a class <u>must</u> file a motion for
> certification that the action is maintainable as a class action within 90 days after
> service of a pleading purporting to commence a class action, including cross claims
> and counterclaims.[107]

Plaintiffs filed their original complaint purporting to commence a class action on August

14, 2019,[108] approximately two-and-a-half years before they moved for class certification.[109]

Plaintiffs offer two arguments for why they did not violate the rule. First, Plaintiffs note that the

local rule was amended in December 2021.[110] This does not help them though, because

December 2021 is more than ninety days after not only the filing of Plaintiffs' original class

action complaint (which occurred more than two years earlier),[111] but more than ninety days

after even the close of class discovery, which ended in July 2021.[112] The local rule containing the

ninety-day filing requirement clearly was in force when Plaintiffs violated it. Plaintiffs'

---

[105] *See* Fed. R. Civ. P. 23(a)(4).

[106] *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

[107] DUCivR 23-1(d) (effective December 1, 2020 to November 30, 2021) (emphasis added).

[108] ECF No. 2.

[109] *See* Plaintiffs' Motion, ECF No. 145, filed February 7, 2022.

[110] Plaintiffs' Oppositions at 2, ECF Nos. 134 & 142.

[111] It is also more than ninety days after the Second Amended Complaint was filed. *See* ECF No. 86, filed January 5, 2021.

[112] *See* Fourth Amended Scheduling Order, ECF No. 128.

argument that they did not violate the local rule simply because the rule was amended months *after* Plaintiffs violated it is frivolous.

Plaintiffs' second argument is that the ninety-day rule did not apply because the court "has otherwise ordered."[113] There is no court order in this case setting a different deadline for a motion for class certification. However, it is understandable why Plaintiffs would anticipate the deadline had effectively been extended because the parties were granted a lengthy class discovery period with multiple extensions. The problem for Plaintiffs is that, as noted above, the class discovery deadline was in July 2021. Plaintiffs did not file a motion for class certification then, ninety days later, or anytime during 2021. In fact, they did not move for class certification until February 2022.[114] There is no basis at all for Plaintiffs to argue that the court "otherwise ordered" that they could wait to file their motion for class certification until February 2022.

Plaintiffs did not just violate the District of Utah's local rules regarding the timing of a class certification motion. Federal Rule 23(c)(1) provides that certification should be determined at "an early practicable time." While this rule is less concrete, it still presents tremendous difficulty for Plaintiffs in this case. Plaintiffs argue they did not believe it was practicable to file the motion until seven months after the close of class discovery because they had not obtained certain third-party records.[115] Plaintiffs do not explain why it was not practicable to move for certification prior to receiving third-party records. Nor do they indicate that during the interim of not moving for certification that they were able to obtain the information or that they took any other actions that would have warranted such a delay. Indeed, Plaintiffs provide no explanation

---

[113] Plaintiffs' Oppositions at 2, ECF Nos. 134 & 142.
[114] Plaintiffs' Motion, ECF No. 145, filed February 7, 2022.
[115] Plaintiffs' Oppositions at 3, ECF Nos. 134 & 142.

for why they could not proceed against Vivint based on the Callfire text messages, which they now finally have done. In rare circumstances, it might be the case that waiting to seek class certification until after the time set by local rule has long expired, extensive class discovery has been completed, and then seven more months have passed besides, will be considered to be "an early practicable time" consistent with Plaintiff's "vigorous" prosecution burden. This is not one of those cases.

After Plaintiffs failed to file for class certification by the required deadline, Defendants then moved to deny class certification in November and December 2021.[116] Defendants made numerous arguments about why no class could be certified under Rule 23(a) and for various other reasons. Defendants' two motions overlapped, but also covered many different factual and legal arguments over about fifty pages.[117]

Plaintiffs responded with two virtually identical four-page oppositions.[118] The twin oppositions: (1) accused the Defendants of improperly moving to deny class certification, (2) encouraged the court to dispose of the motions under Rule 12(f), and (3) defended Plaintiffs' failure to timely move for class certification.[119] The oppositions did not discuss the Rule 23(a) factors at all.[120]

---

[116] *See* DSI's Motion, ECF No. 156, originally filed as ECF No. 132 on November 30, 2021; Vivint's Motion, ECF No. 138, filed December 17, 2021.

[117] Some of the arguments were misguidedly focused on a 23(b)(3) class, but numerous other arguments were not.

[118] Except for two sentences indicating that Plaintiffs are preparing and will soon file a motion for certification under Rule 23(b)(2) and not under 23(b)(3), the oppositions are identical.

[119] Plaintiffs' Oppositions, ECF Nos. 134 & 142.

[120] *Id.* at 2 (stating that "Plaintiffs do not intend to brief class certification issues in opposition to an improper motion to deny").

The Tenth Circuit has not found preemptive motions to deny class certification to be improper. It has stated that "[t]he district court is in a better position to address these concerns when presented with a proper Rule 23 motion for class certification or a 'pre-emptive' motion to deny class certification."[121] Other circuits have explicitly determined that "[n]othing in the plain language of Rule 23(c)(1)(A) either vests plaintiffs with the exclusive right to put the class certification issue before the district court or prohibits a defendant from seeking early resolution of the class certification question."[122] The Second, Third, Sixth, and Eighth Circuits have found preemptive motions to deny to be proper.[123] In contrast, Plaintiffs' claims that they need not "brief class certification issues in opposition to an improper motion to deny" were unsupported by any reference to apposite authority, binding or otherwise.[124]

In its reply, DSI identified extensive case law as support that a preemptive motion to deny can be proper and is not classified as a motion to strike.[125] Yet, over two weeks later,

---

[121] *Romero v. TitleMax of New Mexico, Inc.*, 762 Fed. App'x 560, 565 (10th Cir. 2019) (citing *Adams-Chevalier v. Spurlock*, No. 16-cv-02691-WYD-STV, 2017 WL 5665149, at *6–7 (D. Colo. Sept. 25, 2017) as acknowledging pre-emptive motions to deny class certification).

[122] *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939-40 (9th Cir. 2009).

[123] *See Richardson v. Bledsoe*, 829 F.3d 273, 288 (3d Cir. 2016) ("Yet the absence of a motion should not necessarily be fatal. Accordingly, we join with the courts of appeals which have held that "nothing in the plain language of Rule 23(c)(1)(A) either vests plaintiffs with the exclusive right to put the class certification issue before the district court or prohibits a defendant from seeking early resolution of the class certification question." (cleaned up) (quoting *Vinole*, 725 F.3d at 59)); *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) ("Rule 23(c)(1)(A) says that the district court should decide whether to certify a class 'at an early practicable time' in the litigation, and nothing in the rules says that the court must await a motion by the plaintiffs. As a result, 'either plaintiff or defendant may move for a determination of whether the action may be certified under Rule 23(c)(1).'" (quoting 7AA Charles Allen Wright et al., *Federal Practice and Procedure* § 1785)); *Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 21–22 (2d Cir. 2003); *Smith v. Bayer Corp.* (*In re Baycol Prods. Litig.*), 593 F.3d 716, 720 n.2 (8th Cir. 2010) (citing *Vinole* that "Rule 23 allows defendants to move preemptively to deny class certification prior to plaintiffs' moving for certification."), *reversed on other grounds sub nom. Smith v. Bayer Corp.*, 564 U.S. 299 (2011).

[124] *See* Plaintiffs' Oppositions at 2, ECF Nos. 134 & 142.

[125] DSI's Reply at 2–6.

Plaintiffs filed an almost-identical four-page opposition to Vivint's motion to deny class certification, again claiming that the motion to deny was somehow improper and should be classified as a motion to strike. The opposition simply ignored the contrary cases of which Plaintiffs had been made aware.[126] The Rule 12(f) standard Plaintiffs urged the court to adopt pertains, of course, to motions to strike allegations from a complaint, not post-discovery class certification motion practice based on record evidence.[127]

The court has already addressed Plaintiffs' failure to timely file its motion for class certification, as well as their efforts to excuse their long-belated filing. In sum, Plaintiffs' efforts to resist Defendants' motions to deny class certification effectively consisted of four pages containing three arguments, each of which was wrong on the facts, the law, or both, and which left entirely unaddressed the Rule 23(a) factors.

In February 2022, Plaintiffs finally filed their motion for class certification. It contained about six pages of facts and six pages of legal argument, or about one page of argument for each of the 23(a) factors and the 23(b)(2) requirements on which Plaintiffs bear the "strict burden" of showing that a class should be certified.[128] Of course, the quality of advocacy is not measured by length: many pleadings, motions, and briefs are made worse, not better, by increased length. But in a case where Plaintiffs seek to avoid "the usual rule" of individual litigation, bear the strict burden of showing a class is warranted, and are seeking three multi-year nationwide classes— potentially with multiple subclasses—of at least 100,000 plaintiffs, it is unlikely that the court

---

[126] Plaintiffs' Opposition to Vivint's Motion to Deny, ECF No. 142.
[127] Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient or any redundant, immaterial, or scandalous matter."); *see also Vinole*, 571 F.3d at 941 (distinguishing a district court case that considered a motion to strike under Rule 12 when the defendant had not answered the complaint and discovery had not yet commenced).
[128] *See Trevizo*, 455 F.3d at 1162.

will find such a parsimonious motion to be evidence of "vigorous" prosecution. As noted

elsewhere, the effort was insufficient on multiple Rule 23(a) factors.

The other adequacy factor is whether there are conflicts between Plaintiffs and absent

putative class members. Defendants argue there are conflicts given Plaintiffs' counsel's

representation in another pending TCPA action, *Fitzhenry v. Vivint*.[129] In that case, proposed

class counsel represents a plaintiff seeking class certification against Vivint based on similar

claims of violations of the TCPA.[130] That case was transferred from the District of South

Carolina in part because the putative class was "wholly subsumed by the *Perrong* automated call

class."[131] Plaintiffs argue that their case here is different from the *Fitzhenry* case because that

case is limited to calls from a different dealer, RS&I, who worked with Vivint.[132] But Plaintiffs

do not address how the potential *Fitzhenry* class is not affected by the class sought here, which

seeks injunctive relief based on anyone called or texted by "Defendants, **and/or a third party**

acting on their behalf."[133] The putative class here is not definitionally limited to just Vivint and

DSI, but any other third party acting on their behalf, including other dealers like those at issue in

*Fitzhenry*. As another judge noted, the *Fitzhenry* class overlaps the *Perrong* class. There may be

no conflicts between the classes, but Plaintiffs have not met their burden of demonstrating that.

In sum, Plaintiffs have not met their burden to show that they and their counsel are

adequate for the proposed classes in this case. Because Plaintiffs are serial and essentially

---

[129] *Fitzhenry v. Vivint*, Case No. 2:21-cv-00501 (D. Utah); *See* Vivint's Opposition at 43.
[130] Vivint Opposition at 43 (referencing *Fitzhenry v. Vivint*, Case No. 2:21-cv-00501 (D. Utah)).
[131] Order Granting Motion to Transfer at 5, ECF No. 32, *Fitzhenry v. Vivint*, Case No. 2:21-cv-00501.
[132] Plaintiffs' Reply at 9.
[133] Plaintiffs' Motion at 2.

professional litigants, there may be conflicts with putative class members.[134] And while Plaintiffs and their counsel no doubt are experienced, there is considerable record evidence in this case that they have not prosecuted this action vigorously on behalf of the classes they seek to create.[135] Plaintiffs seek to represent three nationwide classes spanning multiple years and involving many tens of thousands of absent class members. Plaintiffs did not comply with the District of Utah's local rules on the timing for filing a class certification motion. They also did not file their motion "as soon as practicable." When Defendants then moved for denial of class certification, Plaintiffs filed only dismissive, cookie-cutter oppositions to the substantial issues and challenges posed to their desired classes. Finally, when Plaintiffs filed their own motion for class certification, it was a summary effort that failed to meaningfully address many of the salient issues. While adequacy does not require excellence, the court cannot find the leisurely and limited efforts in this case to be the "vigorous"[136] representation required to certify multiple classes of the size and scope sought, particularly for a class that will not permit opt outs.

---

[134] This includes not just the possible conflict with other putative classes they are seeking, but also the concerns addressed at the end of the typicality analysis. *See supra* at 17–19.

[135] The court does not consider the alleged inadequacies Defendants argue occurred in other cases. *See* Vivint's Opposition at 45–48.

[136] *See Rutter*, 314 F.3d at 1187–88 (noting the second adequacy requirement as whether plaintiffs and counsel will "prosecute the action vigorously on behalf of the class").

**ORDER**

For the foregoing reasons, DSI's and Vivint's Motions[137] are GRANTED and Plaintiffs'

Motion[138] is DENIED.

Signed June 23, 2022

BY THE COURT:

_____

David Barlow
United States District Judge

---

[137] ECF Nos. 138 & 156.
[138] ECF No. 145.